STATE of Missouri, Plaintiff-Respondent,

v.

Steven James POLK,
Defendant-Appellant.

No. 35812.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Oct. 21, 1975.

Charles D. Kitchin, Public Defender, Thomas J. Prebil, James C. Jones, Asst. Public Defenders, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Paul Robert Otto, Asst. Atty. Gen., Brendan Ryan, Circuit Atty., Patrick J. Hitpas, Asst. Circuit Atty., St. Louis, for respondent.

KELLY, Judge.

Steven James Polk, hereinafter the defendant, appeals from a conviction, following jury trial, of Illegal Possession of a Schedule I Substance, Heroin, in violation of §§ 195.020 and 195.200 ·RSMo. 1971, and the court-imposed sentence of 12 years in the custody of the Missouri Department of Corrections.

Defendant was charged in an Amended Information with the above named offense on May 24, 1973, and a prior conviction of possession of a stimulant drug on May 1, 1970. During the course of the trial a hearing was had on the issue of the prior conviction and from the evidence adduced thereat the trial court found that defendant was subject to the provisions of § 556.280, the Second Offender Act, and did not, therefore, submit to the jury the issue ·of punishment.

Viewed in a light most favorable to support the jury verdict, the evidence at trial would support a finding that on May 17, 1973, an unidentified, previously reliable informer advised officers Gordon and Morgan

that a Robert Seddens was selling heroin from an apartment at 5802 Clemens, in the City of St. Louis. Relying on this information both officers prepared affidavits, a complaint for search warrant, and a search warrant on that same day. Because Officer Morgan, who was familiar with the neighborhood, doubted the existence of the address given by the informer, he and Gordon accompanied the informer to the neighborhood where the informer pointed out to them the building numbered 5820 Clemens. Having obtained this information the officers then erased the "02" portions of the address in each of the documents they had prepared and inserted in lieu thereof the figures "20." The dates on each of the documents, which had originally been dated May 20th were also changed to May 21st due to the fact that the two police officers had been unable to make application for the search warrant on the 20th. All the aforesaid changes were made prior to the application for the search warrant to a Judge of the St. Louis Court of Criminal Correction on May 21, 1973. The affidavits in support of the application for search warrant refer to the informer advising the police officers that Robert Seddens was selling heroin out of *his* apartment # 304 at 5820 Clemens; that the narcotics were contained in small tin foil packets or capsules and were kept by Seddens in various parts of *his* apartment; that the informant had occasion to be *in Seddens' apartment* on May 17th, and while there observed numerous known narcotic addicts enter and purchase narcotics from Seddens, after which Seddens would then leave the room and return shortly with either small capsules or tin foil packets and hand these to the purchaser and in return receive $10.00 for each capsule or packet sold. The "Application for Warrant" described the contraband as "A large quantity of heroin and various amounts of controlled substances and paraphernalia for the unauthorized use thereof." It further described the premises to be searched as: "The third floor brick constructed multi-dwelling apartment building and basement beneath

said building located, known and numbered as 5820 Clemens Apartment 304: in the City of St. Louis, Mo." The search warrant issued authorized a search for "A large quantity of heroin and various amounts of controlled substances and paraphernalia for the unauthorized use thereof" on the premises described in the affidavits and application as "5820 Clemens Apartment 304."

Armed with the search warrant issued by the Judge of the St. Louis Court of Criminal Correction on May 21, 1973, the two police officers who had made application for the search warrant and four others went to the premises at 5820 Clemens and to Apartment 304 on May 24, 1973, at about 10:45 p. m. and knocked on the door to the apartment. No one responded and after they remained standing outside the apartment for approximately 10 to 15 minutes, the defendant and a white man, approximately 24–25 years of age, approached the apartment. The police officers advised the defendant that they had a search warrant to search the apartment, read the search warrant to him and gave him a copy and advised him that they wanted to search the apartment. The defendant opened the door to the apartment with a key and told them: "Go ahead and search." One officer testified that he also said that he didn't have any narcotics on the premises. Officer Gordon was designated the "search officer" and during the course of the search of the apartment he seized from a closet shelf on the southwest wall of a bedroom situated in the rear of the building, a "male jewelry box" containing a pill box in which there was a pink capsule and some white powder, 2 hypodermic needles, 2 eye-droppers or syringes, and three bottle caps which the police officers identified as "cookers" for the processing of heroin. Also a number of other pink capsules were found in the jewel box but these were partially empty. Defendant was advised that he was under arrest and "given his rights" but nonetheless, when he was asked if he lived in the apartment with anyone, stated that he lived there alone. The items seized on the prem-

ises were placed in an evidence bag and the defendant was given a receipt for them. The defendant was taken to the police station and then the articles seized were taken to the Narcotics division offices at police headquarters where they were marked and then delivered to the police department laboratory. A police department criminologist testified that he analyzed the contents of the evidence bag and by means of a "color test" and a microcrystalline test and determined that five of the seven capsules contained "traces" of a white powder tested positively for heroin. Everything else tested negatively. There was so little heroin in the capsules that it could not be weighed and the tests consumed all of the heroin "traces" found, so there was none left, and the capsules containing these "traces" of heroin were not introduced into evidence at the trial by the State.

Defendant's only witness was John D. Simon, Jr., who testified that in the latter part of April, 1973, he and three others—defendant, Vince Jordan, Mike Greenlea—rented the apartment in the defendant's name. He, Simon, paid $20.00 towards the rent, although he did not know how much the monthly rent was. He had only used the apartment occasionally, amounting to a total of perhaps seven days, for study and to visit with his girlfriend. He testified that the jewel box belonged to Mike Greenlea and that he had seen it and the contents on the dresser in the bedroom on one occasion. He stated that he had to open the lid of the box to see its contents, and on that occasion it did not contain any pink capsules. He denied that he had ever seen Mike Greenlea use heroin in the apartment and said that he had in the past seen syringes like those in the jewel box used by his cousin who was a diabetic. He admitted, on cross-examination, that he did not know whether Mike Greenlea or any of the others with whom he rented the apartment were diabetic. He denied knowing what the bottle caps were for.

On appeal the defendant raises a number of points which he contends require reversal of his conviction. However, because of the result we have reached in this case we do not reach other than his contention that the trial court erred in overruling his motion for judgment of acquittal at the close of all of the evidence for the reason that the State failed to prove "knowing and conscious possession" of heroin which he is charged with unlawfully and feloniously having in his possession on the 24th day of May, 1973.

■ To sustain a conviction for possession of a controlled substance in violation of § 195.020 RSMo. it is essential that the State prove that the defendant did knowingly and intentionally have in his possession the proscribed controlled substance. It is not sufficient that it prove only actual or constructive possession, but the test is whether the defendant was aware of the *presence and character* of the particular substance, *and was intentionally and consciously in possession of it.* State v. Burns, 457 S.W.2d 721, 724[1] (Mo.1970) said: "Possession without knowledge of such possession is not possession in the legal sense of that word . . .. Knowledge of the existence of the object is essential to physical control thereof with the intent to exercise such control and such knowledge must necessarily precede the intent to exercise or the exercise of such control . . ." *Burns,* supra, was followed in *State v. Berry,* 488 S.W.2d 667, 669 (Mo.App.1972).

For reasons hereinafter stated we conclude that there was no substantial evidence that the defendant knowingly and consciously had under his control nor in his possession the heroin in question and the judgment of the trial court must therefore be reversed and the defendant ordered discharged.

■ There is in this case no direct evidence that the defendant had actual possession of the heroin because it was not found on or about his person or in his immediate vicinity. If, therefore, his conviction can be allowed to stand, it must be supported by

evidence which will authorize a jury to find beyond a reasonable doubt that he had constructive possession of the narcotic *and* that he had it with an awareness of the presence and character of the substance. While both of these elements may be proved by circumstantial evidence, such circumstantial evidence must be inconsistent and irreconcilable with the defendant's innocence and point clearly and satisfactorily to his guilt so as to exclude every reasonable hypothesis of his innocence. *State v. Berry,* 488 S.W.2d 667, 669[3] (Mo.App.1972).

█ The decisive issue in this case as we conceive it is whether the State is entitled to the "inference" of knowledgeable and conscious possession of narcotics from the facts of exclusive possession of the premises where only "traces" of heroin are found in some capsules contained in a box hidden in a bedroom closet in the apartment occupied by the defendant. We have read no case where a finding of "traces" of a narcotic alone has been held sufficient to support a finding that the defendant had possession of the narcotic "in the legal sense of the word." In every case we have read there has been at least a measurable quantity of the narcotic found. This defendant was charged with the possession of heroin on May 24, 1973. The only evidence in this case was that someone at some time possessed some heroin as was evidenced by the results of the color test and microcrystalline test conducted by an expert in the field. To find the defendant guilty under the facts of this case of a charge of knowledgeable possession would require the piling of one inference upon another and this is not permitted.

█ The State relies on *State v. Jefferson,* 391 S.W.2d 885 (Mo.1965), *State v. Virdure,* 371 S.W.2d 196 (Mo.1963) and *State v. Young,* 427 S.W.2d 510 (Mo.1968).

We conclude that here, as in *Burns,* supra, the State falls into the same trap in arguing that "simple possession" of a narcotic substance, no matter how miniscule, constitutes substantial evidence to sustain a finding that the possessor of the substance has violated the possession statute. In *Burns* the Supreme Court refuted this same argument when it pointed out, l. c. 724, that the issue there was not whether the defendant had knowledge that marijuana was a narcotic and a prohibited substance, but whether, in order to be guilty of illegal possession, the State had to prove that the defendant was conscious that he had possession of the prohibited substance. This latter question the court answered in the affirmative in *Burns,* and in doing so distinguished *State v. Virdure,* supra, on the grounds that in *Virdure* the court found that there was, under the facts of that case, sufficient evidence to authorize a jury to "draw the inference" that the defendant knew he had possession of the marijuana, but that the effect of *Virdure* was that the State had to prove that the defendant knew he had possession of the drug. In *Virdure* "scrapings" of marijuana were found by a police dog on the floor mat of the trunk of the defendant's automobile in sufficient quantity to be placed in an envelope and tested, although the weight of the scrapings, if any, was not discussed. The police dog, trained in sniffing out narcotics, found, in addition to the aforementioned scrapings, some 75 to 100 red and green colored boxes on a shelf in the northwest corner of the basement of defendant's place of business, at least one box of which contained a quantity of marijuana. How much of the marijuana was found in the box was not set out in the opinion. *Virdure,* for that reason, does not control here because the question of the amount of a narcotic to support a conviction of possession was not before the court there.

Nor do we conclude that *Jefferson* is controlling here, for there the defendant at the time of his arrest was observed by the arresting officer about to "shoot up" with a hypodermic needle and syringe in his right hand and a rag or piece of cloth tied around the upper part of his left arm. After coming to the door and seeing the police officers, the defendant retreated into the house

followed by the officers who seized the aforementioned narcotics paraphernalia and the fluid contained in the syringe. On analysis the fluid in the syringe was found to contain amphetamine. Among the circumstances considered by the court in affirming the conviction of Jefferson was the fact that it is common knowledge that drug addicts use hypodermic needles to inject prohibited drugs into their bodies, defendant's attempt to run away, and his further effort to conceal the syringe and needle behind him until he finally dropped them to the floor at his feet. Jefferson's contention was that the State failed to prove that he had in his possession a drug, amphetamine, which "has an exciting effect on the central nervous system of a human or animal." It was in this context that the court in *Jefferson* reached its conclusion that the phrase in § 195.220 RSMo. 1971, defining a "Stimulant" to mean "amphetamine or any of its derivatives which have an exciting effect on the central nervous system of a human or animal" taken together with the list of all drugs falling within the purview of the terms barbiturate or stimulant required to be filed with the Secretary of State by § 195.230 RSMo. 1971, was not intended by the legislature to "prescribe the quantity or amount of amphetamine or its derivatives that must be possessed before the possession becomes unlawful," and went on to state that "The statute does not specify any permissible quantity or amount." It was on the basis of this conclusion that the court followed by concluding that "the possession of any amount, even a modicum, of amphetamine is within the prohibition of the statute," and that therefore it was not necessary for the State to prove the solution which the defendant had would excite the central nervous system of human or animal. The question whether Jefferson possessed a sufficient quantity of amphetamine from which knowing and conscious possession could be found was not before the court.

*State v. Young, supra,* merely held that three milligrams of heroin was sufficient to sustain a conviction of unlawful possession of a narcotic drug under § 195.020 RSMo. 1971. As in *Jefferson,* the question was not whether there was sufficient substance from which knowledgeable or conscious possession could be proved, and in reaching its conclusion the court carefully noted, l. c. 513: "The record in this case was not directed to the question of *whether there was a measurable quantity of heroin,* it was not claimed that the 'modicum' of heroin in the capsules was of such infinitesimal quantity as to be unmeasurable—it was directed to whether there was such a quantity that 'he could get any effect from three milligrams of heroin.'" (Emphasis supplied). The court in *Young* recognized that there was a split of authority as to what constitutes possession of a narcotic under § 2 of the Uniform Narcotic Drug Act and that the *Virdure* and *Jefferson* cases "indicate, if they do not authoritatively determine" that Missouri is aligned with that line of cases which holds that the possession of any amount, however small, is within the prohibition of the statute. Our holding here does not, in our view, conflict with *Young, Virdure* nor *Jefferson,* because the point we decide here was not presented to the court in those cases in the same posture it is presented to us.

What we do hold here is that under the peculiar facts and circumstances of this particular case where the only evidence to support the conviction of possession of a controlled substance as that term is used in § 195.020 RSMo. 1971, is that an amount of the controlled substance which is so miniscule as to constitute a mere "trace" and which is immeasurable and consumed in the performance of the basic test necessary for identification of the substance is insufficient to support a finding that the accused was knowingly, intentionally and consciously in possession of the controlled substance in violation of the statute.

We are unable to deduce from the State's evidence that on remand it could present further evidence to overcome the infirmities inherent in this case and we therefore do not remand for a new trial, but rather

reverse the judgment of the trial court and order the defendant discharged.

SMITH, C. J., and STEWART, J., concur.