STATE of Missouri,
Plaintiff/Respondent,

v.

Charles SPRAGGINS,
Defendant/Appellant.

No. 60570.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 21, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 19, 1992.

---

Elizabeth Haines, St. Louis, for defendant, appellant.

William L. Webster, Atty. Gen., Robin H. Grissom, Asst. Atty. Gen., Jefferson City, for plaintiff, respondent.

GRIMM, *Presiding Judge.*

In this jury waived case, the trial court found defendant Charles Spraggins guilty of second degree burglary, misdemeanor stealing, and two counts of possession of a controlled substance. Defendant was sentenced as a persistent offender pursuant to § 558.016.*

On appeal, he alleges the trial court erred in (1) overruling his motion to suppress certain evidence and identifications because they were the fruits of an illegal search and seizure, (2) convicting him of stealing under $150.00 and enhancing his sentence because these charges were added

---

* All statutory references are to RSMo 1986, unless otherwise indicated.

through an improperly amended information and because the statute of limitations had run on the stealing charge, and (3) denying his motion for acquittal on the controlled substance charges because the State presented insufficient evidence to prove he knowingly possessed the drugs. We reverse the stealing conviction, but otherwise affirm.

## I. Background

On May 3, 1990, shortly after 12:30 p.m., Marian Paxhia was in her home when she heard a thud from the general direction of the rear bedroom. She walked to the rear of the house and looked out the window. She saw a man "on our sidewalk in our yard walking towards the alley." The man was about forty feet away, wore a hooded jacket and blue jeans, and carried "a sack or something in his hand." She watched him walk about thirty feet, and then he disappeared from her sight.

Mrs. Paxhia called her security service and reported a trespasser. She then went to the basement, where she noticed the door window was broken and the laundry room had been disturbed. She called the police. Less than five minutes later, an officer arrived.

In the meantime, upon receiving Mrs. Paxhia's call, the security service had contacted one of its guards. The guard immediately drove to the alley behind the Paxhia residence. There, the guard saw defendant exiting from Mrs. Paxhia's yard. He carried a bag and wore a hooded jacket and blue jeans. The guard attempted to stop defendant by hollering and honking the horn. Defendant quickened his pace and threw the bag, containing tools, into an ash pit. The bag and its contents were later identified as belonging to the Paxhia's.

Eventually, the guard caught up with defendant and asked him what he was doing. The guard also asked him for identification and conducted a pat down search for weapons.

The guard then called the police station to run "a check" on defendant. The dispatcher told him there was an active warrant out for defendant. The guard arrested defendant, read him his rights, and told him he was turning him over to the police. The guard then called the police station and told the dispatcher he had the person who was wanted on the warrant.

The dispatcher suggested the guard take defendant to a nearby location where some police officers were investigating a burglary. Upon arrival, the guard took the defendant out of the car and started walking him to a police car. Mrs. Paxhia saw defendant and spontaneously said, "[T]hat's the guy that came out of my backyard."

A police officer then arrested defendant. The officer searched defendant and found, among other things, part of an aluminum can. Laboratory analysis indicated residue in the can contained cocaine and heroin.

On June 6, 1990, the State filed an information charging defendant with second degree burglary. Almost a year later, on May 14, 1991, the State filed an amended information alleging defendant was a persistent offender; it also added one count of stealing under $150.00.

That same day, May 14, 1991, the State filed another information under a separate case number. It charged defendant with possession of cocaine, heroin, and drug paraphernalia. The two cases were consolidated for trial.

## II. Arrest and Search

In defendant's first point, he asserts the trial court erred in denying his motion to suppress. He claims the evidence and identifications were "fruits of an illegal seizure and search ... [because the police] lacked probable cause to arrest [him] when they directed the security guard ... to transport [him] to the crime scene."

Defendant alleges he was arrested unlawfully three times and searched unlawfully twice. He claims the first unlawful arrest occurred when the guard arrested him. However, Fourth Amendment protection against unreasonable searches and seizures attach only when there is governmental conduct. *State v. Overby*, 432 S.W.2d 277, 279 (Mo.Div. 1 1968). The guard was employed by a private security

service. Because governmental conduct was not involved, Fourth Amendment protection did not come into play.

■ Defendant alleges the second unlawful arrest occurred when the police directed the guard to take defendant to where police were investigating Mrs. Paxhia's complaint. He contends this direction transformed the guard into a government agent. We disagree.

The "Fourth Amendment applies if a [private] person ... may be regarded as an instrument or agent of the state." *State v. Woods*, 790 S.W.2d 253, 259 (Mo.App.S.D. 1990). "Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities ... a question that can only be resolved 'in light of all the circumstances.'" *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614, 109 S.Ct. 1402, 1411, 103 L.Ed.2d 639, 658 (1989) (citations omitted).

Here, the guard initially called police to run a "check" on defendant. After discovering an active warrant, he arrested defendant and contacted the police again. There was no evidence that the police directed the guard to arrest defendant. The guard testified:

> I told the police I had the subject that was wanted for the warrant from out of Wellston. And they told me that they had a burglary that had occurred down the street at that location, if I would please bring him to that location.

The guard took defendant to the Paxhia house and began walking him to a police car. However, the guard had not turned defendant over to the police at this time. Further, the police arrested defendant only after Mrs. Paxhia spontaneously identified him. Viewed in a light most favorable to the trial court's ruling, the guard arrested defendant and took him into custody on his own initiative. Similarly, the dispatcher's suggestion that the guard take defendant to a nearby police car rather than making the trip to the police station would save the guard time. It did not place him under such direction and control of the police as to transform the guard into an instrument or agent of the government.

■ The third illegal arrest, defendant alleges, occurred when the police officer arrested him without probable cause. We disagree.

■ Defendant acknowledges that a law enforcement official may make a warrantless arrest if it is based on probable cause. *State v. Olds*, 603 S.W.2d 501, 505 (Mo. banc 1980). Probable cause is "knowledge of facts and circumstances sufficient for a prudent person to believe the suspect is committing or has committed an offense." *State v. Kroll*, 682 S.W.2d 78, 82 (Mo.App. E.D.1984).

Here, the arresting officer was the first to respond to Mrs. Paxhia's call. She told him that her house had been broken into and showed him the basement door with the glass broken out. Also, she told the officer she saw a black male wearing a hooded jacket carrying one or two bags in her yard. Within fifteen minutes after the officer's arrival, the guard brought defendant to the Paxhia home. Mrs. Paxhia spontaneously identified defendant. These facts and circumstances were sufficient to give the officer probable cause to arrest defendant.

We need not reach the issue of whether the evidence and identifications were the fruits of an illegal search and seizure. Because the arrest was valid, the search and seizure incident to the arrest was valid. Point denied.

### III. Information and Statute of Limitations

We next consider defendant's second and third points. In his second point, he alleges the trial court erred in (a) convicting him of misdemeanor stealing and (b) enhancing his sentence for second degree burglary as a prior and persistent offender. In his third point, he contends the statute of limitations had run on the misdemeanor stealing charge.

■ As to the first part of defendant's second point, as well as his third point, the State basically concedes defendant's misdemeanor stealing conviction must be reversed. The one year statute of limitations had run on the misdemeanor stealing charge. As a result, the trial court was without jurisdiction to convict defendant of that charge. *See State ex rel. Morton v. Anderson,* 804 S.W.2d 25 (Mo. banc 1991). Defendant's conviction of misdemeanor stealing, and the judgment imposed thereon, is reversed.

■ We turn to defendant's allegation of trial court error in sentencing him as a persistent offender. Defendant did not object at trial, nor was this allegation in his motion for new trial. Thus, the alleged error is not preserved error. We review for plain error.

Rule 23.08 permits amendments of informations "at any time before verdict or finding if no additional or different offense is charged and if a defendant's substantial rights are not thereby prejudiced." *See also* § 545.300. Defendant argues that this rule permits amended informations only when no "additional or different offense" is charged. Because the second information charged an additional offense, misdemeanor stealing, defendant contends the second information is a nullity. As a result, he argues, the allegations in the second information that he is a persistent offender also fall, and he should be resentenced under the original information.

Plain error review is invoked "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. Here, no manifest injustice or miscarriage of justice occurred.

The amended information was filed May 14, 1991. On that same day, defendant was charged in another case with the drug offenses. Defendant raises no issue concerning that information, which also charged him as a prior and persistent offender under § 558.016.

The prior offenses charged in the drug information are identical to those charged in the burglary information. The two cases were consolidated for trial. Thus,

defendant knew on May 14, 1991, that he was being charged as a persistent offender.

The bench trial of the two cases occurred in June, 1991. At that time, the State proved the prior convictions, and the trial court found defendant to be a persistent offender. Defendant does not challenge the trial court's finding that he had two prior convictions.

Finally, defendant was sentenced to eight years on the drug convictions. No challenge is made to those sentences. They were ordered to be served concurrently with the eight year sentence imposed on the burglary conviction. This part of defendant's second point is denied.

## IV. Sufficiency of the Evidence

■ In defendant's last point, he alleges the trial court erred in denying his motion for judgment of acquittal for possession of cocaine and heroin. He claims the State presented insufficient evidence of his knowledge of "the presence and character of the residue contained in the bottom of the aluminum can."

■ In reviewing the sufficiency of the evidence, "[w]e consider as true the evidence most favorable to the state together with all reasonable inferences therefrom, disregarding evidence and inferences to the contrary." *State v. Isom,* 660 S.W.2d 739, 740 (Mo.App.E.D.1983).

■ "To sustain a conviction for possession of controlled substances, the State must prove the defendant knowingly and intentionally possessed the substance and that the defendant was aware of the nature of the substance in question." *State v. Vitale,* 801 S.W.2d 451, 456 (Mo.App.E.D. 1990). Knowledge may be shown by circumstantial evidence. *State v. Bell,* 719 S.W.2d 763, 765 (Mo. banc 1986). "A *prima facie* case of knowing possession of a controlled substance is made out by the prosecution showing the defendant's possession of the substance." *Id.*

The police officer testified that he removed a spoon with a charred residue, the

bottom part of an aluminum can, and a syringe from defendant's right front pants pocket. Tests revealed the residue in the can was positive for both cocaine and heroin. Under *Bell,* the direct evidence that defendant had cocaine and heroin on his person is sufficient to infer he had knowledge of the presence and character of the drugs. *See Id.*

However, defendant argues that the State cannot draw an inference of knowledge from possession if the drugs found are only a trace amount. He relies on *State v. Polk,* 529 S.W.2d 490 (Mo.App.E.D. 1975).

The holding in *Polk* was limited to "the peculiar facts and circumstances of [that] particular case." *Id.* at 494. The State's evidence indicated Polk lived in an apartment alone. A "male jewelry box," containing traces of drugs, was found in a closet. However, Polk's witness said that he and three others, including Polk, rented the apartment. Further, this witness testified that the jewelry box belonged to one of the other renters.

The *Polk* court noted there was no direct evidence "defendant had actual possession of the heroin because it was not found on or about his person or in his immediate vicinity." *Id.* at 492. It stated: "The decisive issue in this case as we conceive it is whether the State is entitled to the 'inference' of knowledgeable and conscious possession of narcotics from the facts of exclusive possession of the premises where only 'traces' of heroin are found in some capsules contained in a box hidden in a bedroom closet in the apartment occupied by the defendant." *Id.* at 493. The court reversed Polk's conviction, noting to find him guilty would require "the piling of one inference upon another and this is not permitted." *Id.*

*Polk* is distinguishable. In *Polk,* there was no direct evidence that Polk possessed the drug. Here, the State presented direct evidence that the heroin and cocaine were actually on defendant's person.

Further, in the same bag with the can, defendant was carrying a spoon with a charred residue and a syringe. Under the circumstances here, it is arguable the spoon and syringe were drug paraphernalia. *See* § 195.010(18)(h) and (k), RSMo (Cum.Supp.) 1991. Point denied.

We reverse the stealing conviction, but otherwise affirm.

CRANDALL and REINHARD, JJ., concur.