STATE of Missouri, Plaintiff–
Respondent,

v.

Russell McKELVEY, Defendant–
Appellant.

No. 25664.

Missouri Court of Appeals,
Southern District,
Division Two.

March 25, 2004.

Kent Denzel, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Leslie E. McNamara, Office of Attorney General, Jefferson City, for respondent.

KENNETH W. SHRUM, Judge.

After a bench trial, Russell McKelvey ("Defendant") was found guilty of possessing a controlled substance in violation of section 195.202.[1] Defendant's appeal advances two reasons for reversal. First, Defendant claims there was insufficient evidence to support his conviction for possession of methamphetamine. Second, Defendant claims that the evidence showing Defendant possessed a controlled substance should have been suppressed as the result of an illegal search and seizure. We disagree. We affirm.

## FACTS

Because Defendant challenges the sufficiency of the evidence, we must accept as true all evidence favorable to the State, including all favorable inferences that may be drawn from the evidence while disregarding all evidence and inferences to the contrary. *State v. Withrow,* 8 S.W.3d 75, 77 (Mo.banc 1999). At 3:22 A.M. on March 7, 2001, officer Randy Robinson of the Lebanon police department was sent to a local apartment complex to investigate a complaint of a possible domestic dispute. The dispatch information was that a male and a female were arguing in the parking lot of the complex. When Robinson arrived, the couple ran away upon seeing him. Eventually, Robinson caught up with the pair and began his investigation.

The male suspect (Defendant) was known to Robinson because he had "dealt with [Defendant] other times." Upon questioning by Robinson, Defendant admitted to having a verbal argument with the female at the scene, Shannon Rogers. At this point, Robinson did not see any signs of a physical confrontation between Defendant and Rogers. As part of "normal procedure" in domestic violence investigations, Rogers was separated from Defendant so that he could not "intimidate" her and coerce her to lie.

While Robinson was speaking with Defendant, Rogers told another officer on the scene that Defendant "had not really hurt her." At this point, Robinson admitted that it did not "appear" any criminal activity had occurred or was occurring. Robinson, however, still wanted to speak with Rogers alone before he closed the investigation. Likewise, Robinson stated that another standard procedure was to run a computer check on a suspect to ensure no outstanding warrants were issued for his or her arrest. Consequently, Robinson asked Defendant for identification.

Instead of pulling identification from his pocket, Defendant retrieved a "small plastic container" that appeared to contain crack cocaine. Robinson asked what was in the container, and Defendant responded it was "nothing" and attempted to put it back into his pocket. As Robinson reached for the container, Defendant attempted to conceal the evidence by emptying the container and throwing the container and its contents to the ground. Defendant was then placed under arrest. Robinson retrieved the contents of the container, a small piece of cotton weighing .01 grams that contained unmeasurable amounts of methamphetamine. Robinson testified that methamphetamine users typically use cotton "to filter out little impurities that are in [the drug]."

Defendant's pre-trial motion to suppress evidence was overruled. At trial, the evi-

---

**1.** All statutory references are to RSMo (2000), unless otherwise indicated.

dence was admitted over Defendant's objections. The trial court found Defendant guilty of possession of a controlled substance and sentenced him to one year in prison. This appeal followed.

*Point I: Sufficiency of the Evidence*

■ In his first point on appeal, Defendant urges reversal because the evidence was not sufficient "to allow the [judge] to reach a subjective state of near certitude that [Defendant] knowingly possessed methamphetamine." He argues the "evidence showed only that there was an invisible amount of methamphetamine on a piece of cotton that weighed [.01 grams], which is an indication at most of past use ... not of present possession."

Essentially, as we understand his argument, Defendant claims that possession of drug *residue* does not constitute possession of the drug itself because the accused is not aware, or cannot know, of the presence of such a minute amount. We disagree.

"[I]t is unlawful for any person to possess or have under his control a controlled substance." § 195.202.1. Methamphetamine is a Schedule II controlled substance listed in the Narcotic Drug Act (§§ 195.005 to 195.425). § 195.010(5); § 195.017.4(3). Thus, for the State to make a submissible case against Defendant, it had to prove (1) Defendant was consciously and intentionally in possession of methamphetamine, and (2) Defendant was aware of the presence and nature of the substance. *State v. Purlee*, 839 S.W.2d 584, 587[3] (Mo.banc 1992).

■ "A person has actual possession if he has the substance on his person or within easy reach and convenient control." § 195.010(32). On the other hand, proof of the presence and character of a substance is normally supplied by circumstantial evidence of the acts and conduct of the accused from which it can be fairly inferred

he or she knew of the existence of the contraband. *State v. Rivers*, 554 S.W.2d 548, 551 (Mo.App.1977).

Here, Defendant was in actual possession of the controlled substance. The cotton ball containing methamphetamine was found in a container in Defendant's pocket. That is actual possession under section 195.010(32). Moreover, ample circumstantial evidence was adduced to prove Defendant intentionally, knowingly, and consciously possessed methamphetamine. For instance, Defendant ran from the police when he first saw Robinson pull into the apartment complex. *State v. Harris*, 807 S.W.2d 528, 530 (Mo.App.1991) (flight from authorities can be used as evidence of consciousness of guilt). Additionally, Robinson testified that Defendant was visibly "apprehensive." *State v. Mishler*, 908 S.W.2d 888, 892[7] (Mo.App.1995) (visible nervousness can be used to show a defendant's awareness of the controlled substance). Most importantly, Defendant attempted to conceal and destroy the evidence by throwing the cotton ball and the container to the ground. *State v. Powell*, 973 S.W.2d 556, 559 (Mo.App.1998); *Mishler*, 908 S.W.2d at 892[8] (both cases holding that efforts of concealment or hiding drugs can be used to show consciousness of guilt).

In sum, we find that the direct and circumstantial evidence presented here was sufficient for a reasonable finder of fact to conclude beyond a reasonable doubt that Defendant intentionally and knowingly possessed methamphetamine and was aware of the presence and nature of the substance. *Purlee*, 839 S.W.2d at 587[3].

In so deciding, we have not ignored cases cited by Defendant, namely, *State v. Baker*, 912 S.W.2d 541 (Mo.App.1995), and *State v. Polk*, 529 S.W.2d 490 (Mo.App. 1975). Defendant uses those cases to argue that a person can never be convicted

of possessing a controlled substance if the drug is invisible and the quantity thereof is immeasurable. Defendant has misinterpreted the holdings of those cases, however, as that is simply not the law in Missouri.

First, we note that *Baker* and *Polk* specifically limited their respective holdings to the facts of the cases before them. *See Baker*, 912 S.W.2d at 543; *Polk*, 529 S.W.2d at 494. Second, both cases dealt with the question of whether the defendant knowingly, intentionally, and consciously possessed the controlled substance.

In this regard, *Polk* held that trace amounts of heroin (visible, but not weighable), found in a jewelry box in the defendant's apartment, were insufficient to show a knowing and conscious possession. *Id.* at 492. The court noted that the most that could be said of this evidence was that someone at some time possessed heroin in the apartment, i.e., the evidence only indicated past use not present possession. *Id.* at 493. Most importantly, the prosecution did not present any incriminating circumstantial evidence tending to show consciousness of guilt. Therefore, "the only evidence" tending to show intentional, knowing, and conscious possession was a minuscule amount of heroin. *Id.* Those are not the facts of this case. The record here had substantial *other* evidence, in addition to the trace amounts of methamphetamine, tending to show Defendant's conscious, knowing, and intentional possession; consequently, our holding does not conflict with *Polk.*

Likewise, our holding does not conflict with *Baker*, wherein the court was faced with similar facts as in *Polk.* Baker was arrested at 7:00 P.M. and admitted to smoking crack cocaine at 4:00 P.M. Baker was found in possession of a crack pipe with an invisible and immeasurable amount of cocaine residue burnt thereon.

Baker claimed to have "just bought" the crack pipe from "a guy on Messanie" when he was arrested. *Baker*, 912 S.W.2d at 542. The *Baker* court thoughtfully discussed the prior case law on the subject, including *Polk*, and from that concluded that the *only* evidence of present possession was the crack pipe containing residue. *Id.* at 545. As such, the State failed to prove Baker knowingly, intentionally, and consciously possessed cocaine. As in *Polk*, there were no incriminating circumstances (as there are here) indicating Baker knew he possessed cocaine.

Had Defendant not run from the police, not been visibly apprehensive, and not tried to conceal the drug, his reliance on *Polk* and *Baker* would have been well-founded. On this record, however, such reliance is misplaced. Instead, another line of cases governs, namely those which hold that (1) a quantitative analysis is not a prerequisite to proving possession of a controlled substance and (2) the State can prove possession by showing the substance was *identifiable*, by chemical analysis, as a controlled substance. *See State v. Mayabb*, 43 S.W.3d 429, 432–33 (Mo.App.2001); *State v. Smith*, 808 S.W.2d 24, 25–26 (Mo. App.1991); *State v. Willers*, 794 S.W.2d 315, 319–20 (Mo.App.1990); and *State v. Kuhrts*, 571 S.W.2d 709, 714–15 (Mo.App. 1978). This is confirmed by the statutory definition of a Schedule II controlled substance, i.e., "[a]*ny* material, compound, mixture, or preparation which contains *any quantity*" of methamphetamine. § 195.017.4(3) (emphasis supplied).

■■■ Based on the authorities last cited, we are persuaded there is no "threshold" amount that must be proven in order to convict a person for possession of a controlled substance. The test is not whether the drug is visible or measurable, although these facts can be used to show a defendant did not intentionally, knowingly,

and consciously possess the substance. The test is whether the substance can be identified by chemical analysis as a controlled substance *regardless* of quantity. If the state can demonstrate that a substance is in fact a controlled substance, then it must also show that a defendant intentionally, knowingly, and consciously possessed it. The evidence here was sufficient to support that finding of guilt. Point denied.[2]

### Point II: Search and Seizure Issue

■ In his second point, Defendant alleges the trial court committed reversible error when it overruled his motion to suppress and admitted into evidence the methamphetamine seized by Robinson from the container. Defendant claims the evidence was found "as the result of an invalid seizure" and should be suppressed as the "fruit of the poisonous tree." Defendant premises his claim of an invalid seizure on the following: "[Robinson] did not have reasonable suspicion on which to base his continued detention of [Defendant] after the reason for the stop had terminated, because he had no suspicion that there had been or was any criminal activity." We disagree with Defendant's characterization of the evidence.

■ Because Defendant filed a motion to suppress and properly objected to the admission of the evidence at trial, the appellate court examines the record made at the suppression hearing as well as the trial record. *State v. Deck,* 994 S.W.2d 527,

534[9] (Mo.banc 1999); *State v. Weddle,* 18 S.W.3d 389, 391[2] (Mo.App.2000). We must view the facts in the light most favorable to the trial court's ruling. *Id.* We also defer to the trial court's factual findings and credibility determinations and review only to determine if they are clearly erroneous. *Id.* at 391–92[8].

■ The Fourth Amendment of the U.S. Constitution and Article I, section 15 of the Missouri Constitution guarantee the right of citizens to be free from unreasonable searches and seizures. *State v. Martin,* 79 S.W.3d 912, 916 (Mo.App.2002). Generally, warrantless searches and seizures are per se unreasonable, but well-delineated exceptions do exist to this general rule. *Id.* at 916[7]. One such exception is the so-called *Terry* stop, a minimally intrusive seizure for investigative purposes.[3] *State v. Taber,* 73 S.W.3d 699, 704–05[10] (Mo.App.2002). "During a Terry stop, police officers may stop or detain an individual if they have a reasonable suspicion based on specific and articulable facts from the totality of the circumstances that the person is or was involved in criminal activity." *State v. Pfleiderer,* 8 S.W.3d 249, 254[7] (Mo.App. 1999). The detention, however, can last only as long as reasonably necessary to effect its initial purpose, i.e., whether criminal activity is afoot. *Taber,* 73 S.W.3d at 704.

Robinson testified that he was sent to the apartment complex upon a complaint

---

2. In *Baker,* the court discussed the possibility that "residue" can never be considered a "controlled substance" as that term is defined in the statute. *See Baker,* 912 S.W.2d at 546. Even so, that was not the basis of the reversal; consequently, such discussion was *obiter dicta. State v. McFall,* 991 S.W.2d 671, 676 (Mo.App.1999). Moreover, Defendant never made that assertion in his point relied on, and only tangentially mentioned it in the argument section of his brief. Since Defendant

never developed this argument in his brief, it is one we need not and do not address. *State v. Applewhite,* 771 S.W.2d 865, 870 (Mo.App. 1989).

3. The term *"Terry* stop" originates from the U.S. Supreme Court's decision in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

of domestic violence. He witnessed Defendant and Rogers engaged in a verbal confrontation. When he finally stopped the pair, he began his investigation by asking them "what was going on." Robinson testified that it is normal procedure, as well as a purpose of the instant investigation, to separate the males and females in domestic disturbance cases and speak with them individually. Robinson also stated that he wanted to speak with Rogers separately so that Defendant could not intimidate her. When the two were separated, Robinson admitted that it did not "appear" any criminal activity had occurred or was occurring. Even so, Robinson still had not spoken to Rogers alone, and he wanted to clarify what she meant when she said that Defendant "had not really hurt her."

Before Robinson was able to close the investigation, he discovered the methamphetamine in the container. Stated differently, before Robinson had the opportunity to speak with Rogers alone, Defendant inadvertently revealed a suspicious container in Robinson's presence. The investigation was not concluded at this point. Robinson gained additional grounds for reasonable suspicion that criminal activity was afoot, namely, possession of drugs, during the lawful period of the initial detention. We reject Defendant's arguments to the contrary. Point denied.

The judgment of conviction and sentence is affirmed.

PARRISH, J., Concurs.

RAHMEYER, C.J., P.J., Concurs.