**STATE of Missouri, Plaintiff–Respondent,**

**v.**

**James Lee KOPP, Defendant–Appellant.**

No. SD 29987.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 17, 2010.

Rehearing Denied Oct. 12, 2010.

Application for Transfer Denied
Dec. 21, 2010.

Margaret M. Johnston, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and John M. Reeves, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Judge.

James Lee Kopp ("Defendant") was convicted after a jury trial of the class C felony of possession of a controlled substance (methamphetamine). *See* section 195.202.[1] Defendant now appeals his conviction, asserting two points: 1) that the trial court erred by denying his motion for judgment of acquittal because the evidence adduced at trial was insufficient to prove beyond a reasonable doubt that Defendant knowingly possessed the methamphetamine; and 2) that the trial court plainly erred by admitting into evidence the syringe in which the methamphetamine was found because the search that led to its discovery was unlawful. Finding merit in Defendant's first point, we reverse his conviction and order his discharge.

### Standard of Review

Defendant's specific assertion on appeal is "that the evidence was insufficient to establish beyond a reasonable doubt that [Defendant] had knowledge of the pres-

ence and nature of the unweighable, invisible residue inside the capped syringe that [Defendant] picked up from the kitchen counter in someone else's house."[2] In reviewing a sufficiency of the evidence challenge, we must determine whether "there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). We "view the evidence in the light most favorable to the verdict and give the state the benefit of all reasonable inferences." *State v. Langdon,* 110 S.W.3d 807, 811 (Mo. banc 2003). Inferences contrary to the verdict are disregarded "unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." *State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993). However, the State does not get " 'the benefit of unreasonable, speculative or forced inferences.' " *State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001) (quoting *Bauby v. Lake,* 995 S.W.2d 10, 13 n. 1 (Mo.App. E.D.1999)).

### Facts

Viewed in the light most favorable to the verdict, the evidence demonstrated that on April 22, 2008, a search warrant was executed at Paul Barker's Butler County residence. The warrant allowed the police to search for methamphetamine and evidence related to its manufacture. Upon arriving at Mr. Barker's residence, the officers announced, "Police search warrant," and one of them tried unsuccessfully to kick open the door. An individual inside the residence, Michael Sparkman, opened the door.[3]

---

**1.** Unless otherwise indicated, all statutory references are to RSMo 2000.

**2.** The State concedes in its brief that the residue in the syringe was "invisible and of no measurable weight."

**3.** Defendant testified that he was the person who actually opened the door. Because the testimony given by two officers that Sparkman answered the door is arguably more

Mr. Barker was not at home. His adult son, Gregg Barker, was in the garage when he was found by officers and taken back into the living room, where Defendant and his 14–year–old daughter were located. The officers ordered the three adults (Gregg Barker, Defendant and Sparkman) to get down on the floor. The officers then conducted a "pat-down" search on each of them. Defendant's minor child was allowed to remain seated on the couch and was not searched.

Missouri State Highway Patrol Sergeant Kevin Glaser searched Defendant. While patting Defendant down, Sergeant Glaser asked Defendant if he had any weapons on his person. Defendant replied that he had "a needle or a point … in his pants pocket." Sergeant Glaser viewed the needle or point "as a weapon" and removed a syringe with a capped needle from Defendant's pocket.[4] The syringe was later sent to the "SEMO Crime Lab" for analysis.

A forensic drug chemist with the lab, Amie Nix, analyzed the syringe by rinsing it and testing the contents of that rinse. She was able to determine by that process that the syringe contained methamphetamine residue, but indicated that the residue was not visible and had no measurable weight. Ms. Nix testified that methamphetamine is a schedule II controlled substance. Defendant testified in his own defense, but made no admissions that were helpful to the State.[5]

Defendant preserved his challenge to the sufficiency of the evidence by including it in his motions for judgment of acquittal and post-trial motion for a new trial.

## Analysis

■ Section 195.202 provides, absent certain express statutory exceptions not applicable here, that "it is unlawful for any person to possess or have under his control a controlled substance." "[A] person, with knowledge of the presence and nature of a substance, has actual or constructive possession of the substance." Section 195.010(34) RSMo, Cum.Supp.2006. "In order to sustain a conviction for possession of a controlled substance, the State must show (1) that the defendant consciously and intentionally possessed the substance; and (2) the defendant was aware of the presence and nature of the substance." *State v. Breese,* 250 S.W.3d 413, 420 (Mo. App. S.D.2008) (citing *State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992)).

Defendant argues that the evidence presented at his trial was insufficient to prove that he knew of the presence and nature of the controlled substance because other facts that might prove his knowledge were not present and "the methamphetamine [ ] was invisible and unweighable."

■ Concerning quantity, "Missouri's drug statutes do not establish a minimum amount necessary to support a conviction for possession of a controlled substance." *Breese,* 250 S.W.3d at 422 (citing *State v. Taylor,* 216 S.W.3d 187, 192 (Mo.App. E.D. 2007)). Although the amount in a given case may be small, "the focus is not just on the amount of the drug involved, but, based on all of the surrounding circumstances, whether the defendant knowingly

favorable to the State, we presume it true and disregard Defendant's contrary account.

4. For purposes of our review of the sufficiency of the evidence, we assume, without yet deciding, that the syringe was properly received into evidence.

5. The State also acknowledges in its brief that Defendant and his daughter moved into Barker's residence the day before the search warrant was executed.

possessed the drug." *Breese*, 250 S.W.3d at 422.

■ The visibility of a drug is a factor that supports an inference that a defendant who saw it knew of its presence and nature. In *Breese*, "a white, powdery substance was visible on the scale and present in an amount sufficient to allow [the deputy] to field test it. If the powder was visible to [the deputy] it would also have been visible to [the d]efendant." *Id.* However, the *invisibility* of a drug does not necessarily preclude knowing possession. In *State v. McKelvey*, 129 S.W.3d 456 (Mo. App. S.D.2004), the contraband was "a small piece of cotton weighing .01 grams that contained unmeasurable amounts of methamphetamine." *Id.* at 458. The court did not limit its sufficiency analysis to whether the substance could be seen or weighed. Instead, it stated:

> The test is not whether the drug is visible or measurable, although these facts can be used to show a defendant did not intentionally, knowingly, and consciously possess the substance. The test is whether the substance can be identified by chemical analysis as a controlled substance *regardless* of quantity. If the state can demonstrate that a substance is in fact a controlled substance, then it must also show that a defendant intentionally, knowingly, and consciously possessed it.

*Id.* at 460–61 (emphasis in original).

■ As a result, an analysis of whether sufficient evidence supports an inference that a particular defendant knew of the presence and nature of a controlled substance is fact-intensive and case-specific. In *Breese*, we noted that facts other than the drug's visible residue sufficiently demonstrated the defendant's knowledge of the presence and nature of the controlled substance he had been charged with possessing.

[The d]efendant first denied that the bag (and therefore the scale within) was his, next admitted that it did belong to him, and finally stated that his sister was the person who had packed the bag. [The d]efendant admitted that he had been using methamphetamine and that he was high when [the deputy] conducted his search. Perhaps more tellingly, [the d]efendant tells the officer he is not *selling* any methamphetamine when [the deputy] had not even mentioned that possibility. [The d]efendant also admits that he had actual possession of the bag.

250 S.W.3d at 422 (emphasis in original).

Evidence of knowledge has been held sufficient in other cases where the controlled substance was visible in some manner and other facts also demonstrated knowledge. *See, e.g., State v. Smith*, 808 S.W.2d 24 (Mo.App. E.D.1991), and *State v. Mayabb*, 43 S.W.3d 429 (Mo.App. S.D. 2001). In *Smith*,

[t]he syringe with the cocaine residue was found in defendant's front shirt pocket. The residue on the inside of the syringe was visible. Defendant was therefore in actual physical possession, as opposed to constructive possession, of the trace amount of the cocaine. *In addition*, defendant made two statements which indicated that he was aware of the presence and character of the substance. First, his statement that he had a "hit" of cocaine at 4:00 p.m. raises the inference that the syringe in question was used for that purpose. Second, his statement that there was nothing in the syringe raises the inference that he knew that there had been cocaine in it, at least at 4:00 in the afternoon. These statements by defendant also negate his argument on appeal that he didn't have knowledge of the cocaine's presence because it was only

"left over" in the syringe and because he told the officer the syringe was empty. 808 S.W.2d at 26 (emphasis added). *Mayabb* also involved methamphetamine that was too small to be measured—but still visible as residue—and testimony by a third-party concerning the defendant's possession of it. 43 S.W.3d at 431–32.

> A visible trace of methamphetamine was found on the ink barrel retrieved from [the d]efendant's pocket. In addition, two straws, an ink barrel, two plastic bag corners, a mirror, an art knife and a cigarette lighter were found in [the d]efendant's bedroom, an area over which she exercised control, and the methamphetamine residue on these items was visible to [the officer]. Further, the discovery of the methamphetamine residue corroborated [the defendant's daughter's] testimony that methamphetamine was present in [the d]efendant's home and the items found matched [the daughter's] description of the drug paraphernalia.

*Id.* at 433.

It is possible to have sufficient evidence demonstrating knowledge even when the controlled substance is not visible. In *McKelvey,* proof of knowledge was not limited to an invisible substance on a cotton ball. Instead,

> ample circumstantial evidence was adduced to prove [the d]efendant intentionally, knowingly, and consciously possessed methamphetamine. For instance, [the d]efendant ran from the police when he first saw [the officer] pull into the apartment complex. *State v. Harris,* 807 S.W.2d 528, 530 (Mo. App.1991) (flight from authorities can be used as evidence of consciousness of guilt). Additionally, [the officer] testified that [d]efendant was visibly "apprehensive." *State v. Mishler,* 908 S.W.2d 888, 892 (Mo.App.1995) (visible

nervousness can be used to show a defendant's awareness of the controlled substance). Most importantly, [the d]efendant attempted to conceal and destroy the evidence by throwing the cotton ball and the container to the ground. *State v. Powell,* 973 S.W.2d 556, 559 (Mo.App.1998); *Mishler,* 908 S.W.2d at 892 (both cases holding that efforts of concealment or hiding drugs can be used to show consciousness of guilt).

129 S.W.3d at 459.

*Breese, McKelvey,* and *Mayabb* all distinguished two significant cases in which the evidence was held to be insufficient to support the verdict when the drug quantities at issue were too small to be measured: *State v. Baker,* 912 S.W.2d 541 (Mo. App. W.D.1995), and *State v. Polk,* 529 S.W.2d 490 (Mo.App.St.L.D.1975). 250 S.W.3d at 421–22, 129 S.W.3d at 459–60, 43 S.W.3d at 432–33. Defendant claims his case is like *Polk* and *Baker* and is devoid of the type of evidence present in *Breese, McKelvey,* and *Mayabb.*

*Polk* was a constructive possession case in which five of seven capsules discovered in a jewel box during the execution of a search warrant were found to contain traces of heroin. 529 S.W.2d at 491–92. The traces of heroin were consumed in the testing process and were too small to be measured. *Id.* at 494. At the time of the search, Polk told an officer that he lived alone in the apartment. At trial, Polk presented a witness who said that he (the witness) "occasionally" used Polk's apartment and that yet a third individual, who also shared the apartment, owned the jewel box in which the pills were found. The witness had not seen the capsules in the box. *Id.* at 491–92. In addressing the sufficiency of the evidence, the court stated:

> We have read no case where a finding of "traces" of a narcotic alone has been

held sufficient to support a finding that the defendant had possession of the narcotic "in the legal sense of the word." In every case we have read there has been at least a measurable quantity of the narcotic found. This defendant was charged with the possession of heroin on May 24, 1973. The only evidence in this case was that someone at some time possessed some heroin as was evidenced by the results of the color test and microcrystalline test conducted by an expert in the field. To find the defendant guilty under the facts of this case of a charge of knowledgeable possession would require the piling of one inference upon another and this is not permitted.

*Id.* at 493. The court held that "the peculiar facts and circumstances" of the case were insufficient to demonstrate "that the accused was knowingly, intentionally and consciously in possession of the controlled substance in violation of the statute." *Id.* at 494.[6]

*Baker* involved a crack pipe discovered in the defendant's jacket pocket during a pat-down search. 912 S.W.2d at 542. The pipe contained burnt cocaine residue. Another crack pipe was found on the passenger side of the vehicle the defendant was driving when he was contacted by law enforcement. *Id.* As to the pipe in his jacket pocket, the defendant stated in a written statement, "[i]t was not mine. I had just bought it from a guy on Messanie for $10. I have smoked crack in the past.

The last time I smoked was around 4:00 p.m., was when I smoked crack last." *Id.* The residue in the pipe was too small to weigh. *Id.* The presence of cocaine in the residue was established by rinsing the pipe with a solvent and then testing the rinse. *Id.* at 542. The state conceded that "there was no visible or measurable unused or unburnt cocaine in or on the pipe, and that the conviction is solely based on the fact that a burnt residue of cocaine remained from past use of the pipe to burn cocaine." *Id.* at 544.

The *Baker* court held:

While *Smith* indicates the amount of the drug need not be measurable or enough to give a "high" if it is visible and defendant is aware of what it is, here the amount of residue was so minuscule that to hold that Mr. Baker possessed cocaine would stretch the notion of "possession" beyond common sense, and beyond the meaning of possession as set out in *Polk* and [*State v.]* *Young[,* 427 S.W.2d 510 (Mo.1968) ]. The minimal amount of burnt residue present on the pipe indicated only that it had been used to smoke cocaine in the past; it could not serve as a basis for finding Mr. Baker in current possession of the drug. Moreover, here, unlike in *Smith,* the defendant did not concede that he had previously used the paraphernalia in question.

912 S.W.2d at 545.

Baker also argued that the definition of drug paraphernalia pursuant to section

---

6. We should note that the result in *Polk* was at that time also supported by the now-abandoned "equally valid inferences rule" that "circumstantial evidence must be inconsistent and irreconcilable with the defendant's innocence and point clearly and satisfactorily to his guilt so as to exclude every reasonable hypothesis of his innocence." 529 S.W.2d at 493 (citing *State v. Berry,* 488 S.W.2d 667, 669 (Mo.App.K.C.D.1972)). "The equally valid inferences rule was effectively abolished by

*State v. Grim.*" *State v. Chaney,* 967 S.W.2d 47, 54 (Mo. banc 1998). The rule is now as we have stated above: the State is given the benefit of all reasonable inferences drawn from the evidence, *State v. Langdon,* 110 S.W.3d 807, 811 (Mo. banc 2003), and contrary inferences are disregarded unless a reasonable juror would be unable to disregard them. *State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993).

195.010 "supports the conclusion that mere possession of an object, such as a pipe, which contains the burnt residue of a drug, does not qualify as possession of the drug itself." *Id.* at 543. In considering *Polk*, the *Baker* court stated:

> As in *Polk*, in which similar tests were used, we find the evidence was simply insufficient to support a charge of possession. Rather, the evidence instead supports the conclusion that the mere presence of such a small amount of burnt residue of a drug on an item such as a pipe does not constitute possession of the drug itself although it may well support a conviction for possession of drug paraphernalia.

*Id.* at 546. In regard to the statutory definition of paraphernalia, the court stated:

> This inherent distinction between a drug itself, such as cocaine, as compared to an unmeasurable amount of charred residue left after such a drug is burned, is reflected in section 195.010(18), which sets out factors to be considered in determining whether an object should be considered drug paraphernalia. Two separate factors are the proximity of the object to a controlled substance and, separately, the existence of any residue of a controlled substance on the object. Were possession of all manner of residue, without regard to degree, considered to constitute possession of the controlled substance itself, then the presence of charred residue would *ipso facto* be proof of proximity of the object to the drug. By considering the effect of the presence of charred residue on an object, and by stating simply that it is an indicator that an object is drug paraphernalia, rather than stating that it constitutes possession of the drug itself, the legislature has indicated that, at least in cases involving negligi-

ble residue, it sees such residue as merely an indication of past drug use of the object, not as proof of present possession of the drug itself.

*Id.* The *Baker* court concluded that "the facts of this case present insufficient evidence to support the finding that Mr. Baker was knowingly, intentionally and consciously in possession of a controlled substance in violation of the statute." *Id.*

Our case, then, is reviewed on its particular facts and the reasonable inferences that may be drawn from them, keeping in mind the principles laid down in the cases outlined above. Defendant is not entitled to prevail simply because the methamphetamine residue was invisible. *McKelvey*, 129 S.W.3d at 459–61. But, unlike the situations presented in *Breese* and *Mayabb*, no inference of Defendant's knowledge of the presence and nature of the methamphetamine can be drawn from the fact that he could see it. It was not visible. Defendant's knowledge, if it may be inferred at all, must be inferred from other facts.

Unlike *Breese*, the evidence included no statement by Defendant that he had been using methamphetamine. 250 S.W.3d at 422. Unlike *Mayabb*, the record reveals no testimony by any third parties implicating Defendant in the use or possession of methamphetamine near the time of the search. 43 S.W.3d at 433. Unlike *McKelvey*, the officer did not describe facts in addition to concealment, such as attempted flight or extreme nervousness that would suggest that Defendant knew he was in possession of methamphetamine. 129 S.W.3d at 459.

Of all the cases cited by the parties, Defendant's case is most like *Baker*. Baker had a crack pipe in his pocket that contained burnt residue, but the actual cocaine was not visible to him. 912 S.W.2d at 542. Defendant had a syringe in his

pocket that contained residue of methamphetamine, but the residue was not visible to him. 912 S.W.2d at 542.

The state argues that Defendant's knowledge of the presence of the methamphetamine is shown by the fact that Defendant placed the syringe in his pocket to hide it from view. Defendant admitted on cross-examination that he placed the syringe in his pocket "to get it out of sight." But he did not say he was hiding it because he knew it contained illegal drugs and his nearly immediate disclosure of the presence of the syringe to Sergeant Glaser is significantly less indicative of a consciousness of guilt than that shown in *McKelvey*, where the defendant tried to get rid of the cotton ball by throwing it aside after the officer saw him. 129 S.W.3d at 459.

More importantly, the consciousness of guilt must be about "the presence and nature of the [controlled] substance." *Breese*, 250 S.W.3d at 420. In other words, what did the defendant think he was hiding? If the matter to be proven was that Defendant knew he was concealing a weapon, we believe the jury could reasonably infer that knowledge from the presence of the hidden syringe plus Defendant's response to Sergeant Glaser's question during the pat-down search. But the State did not charge Defendant with wrongfully concealing a weapon. The question to be resolved in this case is whether, by itself, the fact that Defendant had hidden in his pocket what appeared to be an empty syringe was sufficient evidence to allow a reasonable juror to infer beyond a reasonable doubt that Defendant knew the syringe currently contained methamphetamine. Here, the substance later determined to be methamphetamine residue was invisible and unweighable. Unlike *Breese*, the record is devoid of any admission by Defendant that he had used

or possessed methamphetamine near the time of the search. 250 S.W.3d at 422. Also lacking is any claim by the State that other evidence related to methamphetamine or its manufacture was found in Barker's home as a result of the officers' search.

While the State argues that *Baker* is distinguishable because there was no evidence that Baker tried to conceal the crack pipe, the opinion also does not reveal whether Baker told the officer he had the pipe in his jacket. 912 S.W.2d at 542–46. Defendant not only immediately revealed to Sergeant Glaser that he had the "needle or point," but did so in response to the officer's inquiry about whether Defendant had any weapons on his person, not in response to any question about whether he was in possession of any illegal drugs. And while Baker admitted using earlier that day the very substance later found on the pipe, 912 S.W.2d at 542, Defendant made no such admission. We cannot conclude that the evidence in the case at bar was any more substantial than the evidence found insufficient in *Baker*.

Under the evidence presented in this particular case, while there is no question that Defendant was in actual possession of the syringe and its invisible, unweighable contents, no reasonable juror could have found beyond a reasonable doubt that Defendant: (1) consciously and intentionally possessed methamphetamine; and (2) was aware of its presence and illegal nature. As a result, the trial court erred in refusing to grant Defendant's motion for a judgment of acquittal. Defendant's second point—that the syringe and its contents should have been suppressed as the fruit of an illegal search—is moot and will not be addressed.

The judgment of conviction is reversed, and the matter is remanded to the circuit

court which is directed to vacate the judgment and discharge Defendant.[7]

BARNEY, J., and BATES, P.J., concur.

---

7. Not every successful challenge to the sufficiency of the evidence to support a conviction requires a discharge of the defendant. For instance, in *State v. O'Brien*, 857 S.W.2d 212, 220 (Mo. banc 1993) the Court stated:

> Where a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense.

Likewise, where the evidence was insufficient at trial, but other evidence was also erroneously excluded, a retrial may be possible without offending the double jeopardy clause. *See State v. Hedrick*, 637 S.W.2d 306, 308 (Mo. App. W.D.1982) (citing *Burks v. United States*, 437 U.S. 1, 15–16, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)). Here, the State has neither identified what any such lesser offense might be nor argued that Defendant's request for relief (a discharge) would be inappropriate if we were to grant his point on appeal.