**STATE of Missouri, Respondent,**

v.

**Perry FREZZELL, Appellant.**

**No. ED 89630.**

Missouri Court of Appeals, Eastern District, Division Five.

April 29, 2008.

Emmett Queener, Columbia, MO, for appellant.

Shaun Mackelprang, Roger Johnson (Co-Counsel), Jefferson City, MO, for respondent.

NANNETTE A. BAKER, Judge.

## Introduction

Perry Frezzell ("Defendant") appeals from a judgment of the Circuit Court of St. Francois County entered after a jury convicted him of three counts of Endangering an Employee of the Department of Corrections under Section 565.085.[1] The principal issue before this court is whether the trial court abused its discretion when it admitted reports of Defendant's prior uncharged conduct violations ("prior conduct violations") involving other officers at other correctional facilities. We reverse and remand for a new trial.

## Factual and Procedural Background

In the light most favorable to the verdict, the evidence adduced at trial reveals that Defendant was an inmate in the custody of the Missouri Department of Corrections. Defendant was housed in the Eastern Reception Diagnostic and Correctional Center in Bonne Terre ("Facility"). Henry Watson ("Officer Watson"), Derek Gollaher ("Officer Gollaher") and Robert Stockhausen ("Officer Stockhausen") were employed at the Facility as corrections officers.

On November 9, 2005, Officer Watson escorted a nurse as she dispensed daily medication to the inmates in the unit in which Defendant was housed. Normally, Officer Watson would approach the door to an inmate's cell, stand to the side and open the food port, which is a small door within the cell door. The inmate would then put his hand out through the food port to receive his medication. When Officer Watson approached Defendant's cell door, he looked inside and made eye contact with Defendant. Officer Watson then opened the food port and Defendant stuck his hand out and threw feces on Officer Watson. Officer Watson testified that

from the look, smell and consistency, he knew the substance Defendant threw on him was feces. However, the substance was not recovered as evidence.

On the morning of December 6, 2005, Officer Gollaher was distributing food from a food cart to the inmates in the unit in which Defendant was housed. As Officer Gollaher approached Defendant's cell door, Defendant said "here's some piss for you" and threw urine through a crack in the cell door. The urine hit the food cart Officer Gollaher was handling, which was in front of him at the time. Officer Gollaher testified at his deposition hearing that he was not sure that the substance Defendant threw on him was urine. However, Officer Gollaher testified at trial that he was sure that the substance Defendant threw on him was urine because of the smell of the substance.

Later, on the same day, Officer Stockhausen was sent to retrieve a food tray Defendant had refused to hand over to another officer. Officer Stockhausen approached Defendant's door and asked if Defendant was finished with the food tray. Defendant replied yes. Officer Stockhausen opened the food port and Defendant showed Officer Stockhausen the food tray. When Officer Stockhausen reached for the tray, Defendant threw urine on him. Officer Stockhausen testified at his deposition that he was not sure that the substance Defendant threw on him was urine. At trial, Officer Stockhausen testified that he knew the substance was urine because of the smell of the substance. Officer Stockhausen also testified that his uniform was taken, presumably for evidence. However, the uniform was not introduced at trial.

Defendant was charged with three counts of the class D felony of Endangering a Corrections Employee in violation of

---

1. All statutory references are to RSMo 2000 and the Cumulative Supplement 2005.

Section 565.085. Before trial, the State filed a notice of its intent to introduce thirty-four conduct violation reports, involving urine or feces, written against Defendant during his incarceration. The State offered, as its reason for introducing the prior conduct violations, that the evidence would establish Defendant's common scheme or plan to endanger employees of the Department of Corrections by attempting to cause, or causing them to come into contact with his bodily fluids. In a memorandum accompanying the State's notice, the State additionally offered that the prior conduct violations would "demonstrate defendant's animus towards the victim[s], as well as a general motive to harm the victim[s]." The State went on to explain that "though these incidents took place over the span of nearly ten years, the consistency of the defendant's conduct demonstrates a *modus operandi* that legitimately establishes his guilt for all the crimes." [2]

At a pre-trial hearing regarding the admissibility of the thirty-four prior conduct violations, the State offered that "what we have here is we have a pattern of conduct, clearly demonstrating a common scheme or plan which is admissible—prior bad acts are admissible to demonstrate a common scheme or plan. It's almost to the point of *modus operandi* because we have a defendant in multiple occasions in these prior conduct violations saying statements very similar to the statement that he made to CO1 Derek Gollaher where the defendant allegedly said, 'Here's some piss for you'... [t]his appears to be defendant's thing, this is what he does. He lashes out and attacks corrections officers with his own excrement ... Moreover in this in-

stance if the defendant in any way, shape, or form is attempting to claim that these substances weren't urine or feces, that goes to knowledge, that goes to motive, and the prior bad acts demonstrate that this in fact was urine or feces."

The trial court admitted twelve of the thirty-four violation reports, which involved Defendant throwing feces or urine at corrections officers. The trial court ruled that it was admitting the violation reports under the common scheme or plan exception.

In the opening statement, the State told the jury, with regard to anticipated testimony from the custodian of records of the Facility, that "he will testify to you that this has happened before ... 12 times before since 1998 has the defendant either attempted to cause or caused contact with his own urine or his own feces ... this is his M.O. This is what he does folks." In addition, during closing argument the State urged the jury to "remember the testimony of Jamie Crump who got up here and told you about 12 prior incidents, okay. We've got a common scheme here folks. The defendant has engaged himself in a pattern of conduct designed to humiliate and degrade."

The court instructed the jury that "[i]f you find and believe from the evidence that defendant was involved in offenses other than the one for which he is now on trial and other than the offenses mentioned in Instruction No. 13, you may consider that evidence on the issue of a common scheme or plan of the defendant." [3]

The jury found Defendant guilty on all three counts and the trial court sentenced Defendant to seven years' incarceration for

2. Although the State mentions the term *modus operandi* on several occasions, the State did not expressly argue that the evidence of Defendant's prior conduct violations was admissible under the *modus operandi* exception.

3. Instruction number 13 referred to Defendant's previous convictions.

each count to be served consecutively. Defendant appealed. The dispositive issue on this appeal raised by Defendant in his second point of error concerns the admission of evidence about twelve prior conduct violations. Defendant contends that the trial court erred in admitting evidence regarding the prior conduct violations because it constituted evidence of prior bad acts that was impermissibly offered to prove that Defendant had a propensity to engage in the charged crimes.

### Discussion

■ Defendant contends that the trial court abused its discretion in permitting the State to introduce evidence regarding his prior conduct violations. Defendant argues that even though the State offered that the evidence was being introduced to demonstrate a common scheme or plan, the evidence amounted to only a series of similar but unrelated acts that did nothing but demonstrate that the Defendant had a propensity to engage in the charged offenses. Defendant further argues that the evidence does not fall within the common scheme or plan exception in that the prior conduct violations were not related to the charged crimes in such a way that proof of one would tend to establish the other. Lastly, Defendant argues that the evidence does not fit in either the signature/*modus operandi* or knowledge exceptions to admission of hearsay regarding prior bad acts.

■ "The well-established general rule concerning the admission of evidence of prior criminal acts is that proof of the commission of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (Mo. banc 1954). The rationale underlying this rule is grounded in the view that [e]vidence of other crimes, when not properly related to the cause on trial, violates defendant's right to be tried for the offense for which he is indicted. *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992) (internal citations omitted). This right arises from the guarantee of article I, sections 17 and 18(a) of the Missouri Constitution that a defendant has the right to be tried only on the offense charged. *State v. Burns*, 978 S.W.2d 759, 760 (Mo. banc 1998). Article I, section 17 provides that no person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment or information. Article I, section 18(a) states [t]hat in criminal prosecutions the accused shall have the right ... to demand the nature and cause of the accusation.... There are a number of exceptions to the general ban on evidence of prior criminal acts. These exceptions are as well established as the rule itself and include: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; and (5) the identity of the person charged with the commission of the crime on trial. *Sladek*, 835 S.W.2d at 311." *State v. Vorhees*, 248 S.W.3d 585, 587 (Mo. banc 2008) (internal quotations omitted).

In the present case, the State argued throughout the trial that the evidence of Defendant's prior conduct violations was admissible to show a common scheme or plan. The State argued that the prior conduct violations were relevant to prove that Defendant had engaged in a pattern of conduct, which consisted of lashing out and throwing his bodily fluids at corrections officers. Essentially, the State argues that Defendant acted in accordance with this pattern of conduct.

■ The State's arguments do not support the theory advanced at trial for the

admission of Defendant's prior conduct violations. "[I]t certainly is not enough to show that the person on trial committed one or more crimes of the same general nature in order to fall within the common scheme or plan exception. For the prior crimes to be admissible under a common scheme or plan, it must be shown that the prior crimes had some relation to the general criminal enterprise." *State v. Bernard,* 849 S.W.2d 10, 14 (Mo. banc 1993). For evidence of the prior conduct violations to be admissible under the common scheme or plan exception, the State had to show that the Defendant's conduct embraced the commission of the prior conduct violations and the charged offenses in such a way that proof of the prior conduct violations would have a legitimate tendency to prove the charged offenses. *Id.* It is not enough to show that Defendant's prior conduct violations were committed in a fashion similar to the charged offenses. *Id.*

Here, the State failed to show that the prior conduct violations and charged offenses were part of a general criminal enterprise or that they were so related that proof of one would tend to prove the other. The two were separate and independent of each. Additionally, the prior conduct violations, which spanned the two-year period between 1998 and 2000, were too remote from the present offenses for which Defendant was been tried and, beyond similarity, did not have any bearing on the present offenses. The only apparent purpose the disputed evidence served in the trial was to show that Defendant had a tendency to engage in the conduct for which he was on trial. This amounts to propensity evidence in that it showed that because Defendant had engaged in similar conduct in the past, he was more likely to have committed the charged offense.

■ During trial, the State also contended that the evidence of prior conduct violations was admissible to show a pattern of conduct and that Defendant's actions amounted almost to a *modus operandi.* Furthermore, the State argued that, if Defendant was going to make his knowledge an issue, the prior bad acts should be admissible to prove knowledge and intent. At the hearing on Defendant's motion for a new trial, the State argued that the evidence of the prior conduct violations "simply highlighted that there are 12 prior instances in which [Defendant] not only utilized his own bodily fluids to endanger employees of the Department of Corrections, but he did so in a manner that was similar to the case at bar that that lended [sic] to increasing the tendency for him to have committed [sic] for which he was charged, which is the whole point of the prior bad acts exception in this case for a common scheme or plan."

"To say the similarity of defendant's conduct with the victim and with others shows a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other is tantamount to saying that the defendant's scheme or plan was to fulfill his propensity, proclivity or disposition toward such deviant behavior." *Bernard,* 849 S.W.2d at 16. This was essentially the crux of the State's argument to the jury: because Defendant had engaged in similar conduct in the past, he was more likely to have committed the charged offenses because that was his nature. This is exactly what the bar against propensity evidence seeks to avoid. The State failed to articulate a clear basis or exception for the admission of the prior conduct violations.

The trial court also exhibited some uncertainty as to why it admitted the disputed evidence. The trial court initially ruled that the evidence was admissible to show a common scheme or plan and the court

instructed the jury to consider evidence of the prior conduct violations on the issue of a common scheme or plan. However, at the hearing on Defendant's motion for a new trial, the court stated that it found the evidence admissible "due to the fact that the defense was going to raise the issue of unknown substance, as the court sees it comparable to a drug case where the defendant denies that he knew what the substance was and the State is allowed to bring in evidence that the defendant has in fact dealt with the substance before and has knowledge of what the substance is."

■ "In order for intent and absence of mistake or accident to serve as the basis for the admission of evidence of similar uncharged crimes, it is necessary that those be legitimate issues in the case." *State v. Aye*, 927 S.W.2d 951, 955 (Mo.App. E.D.1996). Likewise, knowledge has to be a controverted issue in order for it to serve as a basis for admission of prior bad acts. *Id.* at 956.

In the present case, Defendant did not deny that he intentionally threw the substances at the officers, nor did he deny he knew the nature of the substances. Therefore Defendant's knowledge or intent was not an issue. Indeed, during trial, the State did not proceed under the theory that the prior conduct violations were being admitted to show intent or absence of mistake. Evidence of Defendant's prior bad acts was not admissible to show his intent or knowledge.

■ Moreover, evidence of Defendant's prior conduct violations was inadmissible to show a *modus operandi*. To be admissible to show a *modus operandi*, the prior bad acts and the charged crimes had to be so "unusual and distinctive that they resemble a 'signature' of defendant's involvement in both crimes." *State v. Davis*, 211 S.W.3d 86, 89 (Mo. banc 2006). Additionally, Defendant's identity must be in issue in order to admit his prior bad

acts under the *modus operandi* exception. *Bernard*, 849 S.W.2d at 17.

In the present case, Defendant's identity was not an issue, nor was there anything distinctive or unusual about the prior conduct violations and the charged offenses. The evidence adduced at trial revealed that substances were often thrown through the gaps in the cell doors. It was for this particular reason that metal strips were welded to the cell doors to cover the gaps and prevent inmates from throwing substances through the gaps. Therefore, the disputed evidence was not admissible to show *modus operandi*.

The trial court admitted the disputed evidence to show common scheme or plan and instructed the jury to consider the evidence for the purpose of that exception. When it denied Defendant's motion for a new trial, it stated that the evidence was admitted to show knowledge. It is apparent that the trial court did not clearly perceive the logical relevance of the prior conduct violations to the offenses for which Defendant was on trial. The trial court abused its discretion in admitting evidence of the prior conduct violations where the State failed to articulate a proper basis for admission and the trial court could not determine that the evidence was logically and legally relevant to the present case. Under the facts of this case, there is no exception under which evidence of Defendant's prior conduct violations could have been admitted.

■ Nevertheless, the trial court's error in admitting the disputed evidence is not reversible unless Defendant can show that he was prejudiced by the court's error or that there is a reasonable probability that the verdict would have been different absent the court's error. *State v. Laws*, 121 S.W.3d 571, 574 (Mo.App. S.D.2003). "In criminal cases involving the improper admission of evidence, the test for preju-

dice is whether the improper admission was outcome-determinative. A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence." *State v. Davis*, 226 S.W.3d 167, 171 (Mo.App. W.D. 2007) (internal citations omitted).

We believe that Defendant was prejudiced by the improper admission of the propensity evidence. At trial, Defendant testified that the substances he threw at the officers were water from the sink and a left-over brownie. Officer Stockhausen testified at a deposition and at trial that he was not sure that the substance Defendant threw on him was urine. Officer Gollaher testified at a deposition and at trial that he was not sure that the substance Defendant threw at him was urine.[4] There is no direct evidence in the record that indicates that the substances Defendant threw at the officers were actually feces and urine.[5] However, the jury instructions required the jury to render guilty verdicts if they found beyond reasonable doubt that, Defendant caused or attempted to cause the officers to come into contact with *his feces or urine*. The State had the burden of proving that the substances involved were actually urine and feces. Without direct evidence of the nature of the substances Defendant threw at Officers Watson, Gollaher and Stockhausen, it is probable that the improper propensity evidence affected the outcome of the trial. Without the inadmissible propensity evidence, the jury would have been forced to speculate as to

what Defendant threw at the officers. We cannot say that Defendant was not substantially prejudiced by the trial court's error or that the outcome of the trial would have been the same in the absence of the trial court's error. Point II is granted.

Because we are remanding for a new trial, we need not address Defendant's other points, which deal with evidentiary issues that are not likely to resurface in a new trial.

### Conclusion

We find that the trial court abused its discretion when it admitted evidence of the Defendant's prior conduct violations. The reports were inadmissible as prior bad acts and no exception applied. This case is reversed and remanded for a new trial.

PATRICIA L. COHEN, C.J., and KURT S. ODENWALD, J., concur.

---

4. Both Officer Gollaher and Officer Stockhausen testified that they believed it was urine but could not say for sure that it was urine. Officer Stockhausen testified that the substance may have been diluted urine.

5. Officer Stockhausen's shirt, which was the only item that was collected as evidence, was not introduced at trial.