STATE of Missouri, Respondent,

v.

Ernest E. MOORE, Appellant.

No. ED 95643.

Missouri Court of Appeals, Eastern District, Division Two.

Nov. 8, 2011.

Craig A. Johnston, Columbia, MO, for appellant.

Chris Koster, Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., Jefferson City, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

The defendant, Ernest E. Moore, appeals the judgment entered by the Circuit Court of the County of St. Charles following his conviction by a jury of felony driving while revoked, in violation of section 302.321 RSMo. (Supp.2008);[1] second-degree assault of a law enforcement officer, in violation of section 565.082; resisting arrest, in violation of section 575.150; and possession of a controlled substance (cocaine), in violation of section 195.202 RSMo. (2000). The trial court suspended imposition of sentence on the charge of driving while revoked, and placed the defendant on five years' probation. The court sentenced the defendant as a prior and persistent offender to consecutive terms of imprisonment of fifteen years for

1. All statutory references are to RSMo. (Supp. 2008) unless otherwise indicated.

the assault of a law enforcement officer and seven years for resisting arrest, and to a concurrent term of eight years for possession of a controlled substance.

We dismiss the defendant's appeal of the suspended imposition of sentence on the charge of driving while revoked because a suspended imposition of sentence is not a final, appealable judgment. We hold the State adduced sufficient evidence to convict the defendant of assault of a law enforcement officer and possession of a controlled substance. But because the prosecutor improperly adduced evidence of the defendant's prior convictions as propensity evidence, we reverse the judgment on the remaining counts and remand for a new trial.

### Factual and Procedural History

Viewed in the light most favorable to the judgment, the evidence reveals that St. Charles police officer Daryl Garrett saw a black pick-up run a flashing red light about 12:30 a.m. on February 4, 2009. The officer observed that the truck had no rear license plate lamp, and stopped the truck. He observed the defendant, the truck's sole occupant, reaching around in the passenger seat area. When Officer Garrett checked the defendant's name and registration through dispatch, he discovered that the defendant had multiple outstanding warrants for his arrest. Officer Garrett informed the defendant that he was under arrest, asked the defendant to step out of the truck, opened the defendant's door, and stepped between the door and the defendant's seat in an effort to secure the defendant. The defendant then drove away, causing the truck door to strike Officer Garrett's leg.

Officer Garrett and Officer Young, who had arrived as back-up, pursued the defendant into an apartment complex. The defendant then led multiple officers on a chase through the apartment complex for at least 45 minutes, and then fled from his truck on foot. Early in the pursuit, Officer Young became the lead police vehicle and drove directly behind the defendant. At one point, the defendant drove downhill on a long, straight stretch of road as Officer Chappie, in his marked patrol car, was driving on the same road in the opposite direction. The defendant drove straight at Officer Chappie's patrol car, even though the defendant had sufficient room to pass the patrol car, thus forcing Officer Chappie to swerve to avoid striking the defendant's truck. Had Officer Chappie not swerved from his lane of travel, the defendant would have struck Officer Chappie's car because the defendant made no effort to avoid a collision.

The pursuit continued, and the defendant eventually abandoned his truck in the roadway and fled on foot through the apartment complex. Police received a 911 call from a resident reporting that the defendant was hiding on her patio. Police located the defendant, and Officer Wilkison attempted to handcuff him. The defendant kicked and punched Officer Wilkison, struggled to prevent being handcuffed, and kicked and punched another officer. The defendant relented only after officers twice used a Taser on him. The officers then arrested the defendant.

After the defendant abandoned his pick-up, Officer Garrett called for a tow truck and conducted an inventory search of the defendant's vehicle. In plain view on the passenger seat, Officer Garrett found a small glass tube covered in something like black tape, which was consistent with a pipe used for smoking crack cocaine. Officer Garrett observed a burnt, visible residue inside the pipe. Laboratory tests confirmed the presence of cocaine in the visible residue.

In its second amended information, the State charged the defendant with felony driving while revoked, second-degree assault of a law enforcement officer, resisting arrest, and possession of a controlled substance (cocaine). The defendant filed a motion in limine to prevent admission of his driving record. Further, the defendant expressed his willingness to stipulate to all elements of the charge of driving while revoked, but the State rejected his offer. Alternatively, at the hearing on the motion, the defendant argued that the court should limit admission of the driving record to only the most recent entries that would establish the defendant's knowledge of his revoked status. But the State was adamant that the entire record be admitted to show the defendant's knowledge that his license was revoked. The State cited section 302.312 RSMo. (2000)[2] and three cases for the proposition that the defendant's entire driving record was admissible, namely *State v. Huffman*, 627 S.W.2d 672 (Mo.App. W.D.1982), *City of Kansas City v. Johnston*, 778 S.W.2d 321 (Mo.App. W.D.1989), and *State v. Brown*, 804 S.W.2d 396 (Mo.App. W.D.1991). The trial court ruled that the defendant's entire driving record was admissible based on the State's cited cases.

In its opening statement the State told the jury:

And indeed in many respects this last count [of driving while revoked] is the most troubling, because you will actually see excerpts of his driving record. I'll warn you it's not an easy read. It's lengthy. It's got a lot of things on it. One of the things that's most troubling is that there are twenty-two convictions or guilty pleas for driving while revoked or driving while suspended. A man who had been convicted or pled guilty twenty-two times to driving while revoked is the person who was driving and leading the police on this dangerous chase through a residential neighborhood....

Our evidence will show his license had been revoked for five years and he knew it because one of those driving while revokeds involved a stop that was done less than a month earlier where he was stopped for driving while revoked or suspended.

The defendant conceded immediately thereafter, in his opening statement, that the evidence would show that he was guilty of driving while revoked, but would not establish his guilt on the other charges.

The trial court admitted the defendant's full driving record as Exhibit 1, which revealed not only that the defendant had been notified that his driver's license was revoked at the time of the events at issue, but that he had an extensive record of traffic-related violations and criminal offenses and corresponding license suspensions and revocations stretching back more than twenty years. Among the offenses revealed in the defendant's driving record were DWIs, leaving the scene of an accident, and careless and imprudent driving. The driving record even included notice of a revocation occurring after the events at issue here. The defendant did not testify.

In closing, the defendant again conceded that he was guilty of driving while revoked. He acknowledged that his license was revoked, that he should have known his license was revoked given the notices

---

**2.** Section 302.312.1 RSMo. (2000) provides:
Copies of all papers, documents, and records lawfully deposited or filed in the offices of the department of revenue or the bureau of vital records of the department of health and copies of any records, properly certified by the appropriate custodian or the director, shall be admissible as evidence in all courts of this state and in all administrative proceedings.

the Department of Revenue sent, and that he drove on highways during the events at issue—in short that driving while revoked was, in defense counsel's words, a "[d]one deal." In its closing, the State maintained that the defendant was selfish and did not believe that rules applied to him. The State argued:

> Now, what's [defense counsel's] solution to this? You heard it in opening statement. He said, oh, well, you should find [the defendant] guilty of driving while revoked. Call it a day, acquit him on everything else. *As if conviction number twenty-three for driving while revoked or suspended is going to do anything.* He would take that and run with it. Well, actually he'd drive. This defendant is a danger to everybody, everybody who lives in this county.
>
> *It is time when we deal with this defendant to move beyond passing out traffic tickets* because he's moved beyond that. He no longer is content to just drive while his license is revoked.

(Emphases added). The State cited the defendant's twenty-two prior convictions for driving while revoked four more times during its closing argument. The State concluded:

> The final count is Count Four, the drug—or the driving while revoked. In his opening statement defense counsel said you should find him guilty of that. Who am I to argue with counsel. Of course you should. *But you need to find him guilty of everything else, too, because this isn't going to mean anything to the defendant.*

(Emphasis added.)

The jury asked for all exhibits during its deliberations, and convicted the defendant on all four counts. The trial court sentenced him to a total of 22 years of imprisonment. The defendant appeals.

### Driving While Revoked—Suspended Imposition of Sentence

The defendant appeals the suspended imposition of sentence he received for driving while revoked. He contends that the trial court lacked statutory authority to suspend the imposition of sentence, and cites section 302.321, which provides that no court shall suspend the imposition of sentence for certain repeat offenders.

 The right to appeal a criminal conviction is limited to final judgments. Section 547.070 RSMo. (2000). In a criminal case, the judgment becomes final for purposes of appeal when the court enters judgment and sentence. *State v. Hotze*, 250 S.W.3d 745, 746 (Mo.App. E.D.2008). The word "sentence" means "a judgment or final judgment." *Yale v. City of Independence*, 846 S.W.2d 193, 194 (Mo. banc 1993)(quoting *State v. Lynch*, 679 S.W.2d 858, 860 (Mo. banc 1984)). Thus, when imposition of sentence is suspended, no final judgment exists. *Id.*; *Hotze*, 250 S.W.3d at 746.

 Where no final, appealable judgment exists, we have no jurisdiction to consider the appeal. *Id.* Therefore, we dismiss the defendant's appeal of the charge of driving while revoked. The remedy, if any, when imposition of sentence is suspended, is by means of an extraordinary writ. *Id.* at 746–47.

### Sufficiency of the Evidence

 The defendant claims the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence and in entering judgment and sentence for assault of a law enforcement officer and possession of a controlled substance. We review the denial of a motion for acquittal to determine whether the State adduced sufficient evidence to make a submissible case. *State v. Taylor*, 317

S.W.3d 89, 92 (Mo.App. E.D.2010). When reviewing the sufficiency of the evidence to support the jury's verdict, we accept as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and we disregard all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). We then determine whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.*

### Assault of a Law Enforcement Officer

The defendant challenges the sufficiency of the evidence to sustain his conviction for second-degree assault of a law enforcement officer. He contends that the evidence did not support a reasonable inference that, when he drove his truck directly toward Officer Chappie's car, he knew or was aware that Officer Chappie was a law enforcement officer.

Pursuant to section 565.082.1(6), the State charged the defendant with second-degree assault of a law enforcement officer by recklessly placing Officer Chappie in apprehension of immediate serious physical injury when the defendant drove his truck directly toward a patrol car driven by Officer Chappie, forcing Officer Chappie to veer in order to avoid a head-on collision.

■ In reviewing the sufficiency of the evidence to support the jury's verdict, we consider each element of the crime. *Taylor*, 317 S.W.3d at 92. The State had to prove that the defendant recklessly placed Officer Chappie in apprehension of immediate serious physical injury. Section 565.082.1(6). The culpable mental state for second-degree assault of a law enforcement officer as charged here is "recklessness." "A person 'acts recklessly' or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 562.016.4 RSMo. (2000).

■ Here, the evidence was sufficient to show that the defendant acted recklessly as to whether Officer Chappie was a law enforcement officer. Officer Young testified that after following the defendant into the apartment complex, he took the lead in pursuing the defendant, and was driving directly behind him. As the defendant drove down a hill on a straight stretch of roadway, Officer Young observed Officer Chappie's marked patrol car coming up the hill. Officer Young observed the defendant drive straight at Officer Chappie's car. Even though the defendant had ample room to pass Officer Chappie, he forced Officer Chappie to veer out of his lane of travel to avoid a head-on collision, passing so close to Officer Chappie's vehicle that Officer Young initially believed the defendant's truck had struck the patrol car.

If Officer Young, who was following immediately behind the defendant, could see the oncoming marked patrol car, then the jury could reasonably infer that the defendant could see that he was driving straight toward a head-on collision with a marked patrol car. Thus, at a minimum, the evidence established that the defendant consciously disregarded a substantial and unjustifiable risk that a law enforcement officer was driving the oncoming marked patrol car. And the defendant's disregard constituted a gross deviation from the standard of care that a reasonable person would exercise in the situation.

We hold that the State adduced sufficient evidence to make a submissible case. We deny the defendant's point challenging the sufficiency of the evidence to support his conviction for second-degree assault of a law enforcement officer.

### Possession of a Controlled Substance

The defendant also asserts the evidence was insufficient to establish beyond a reasonable doubt that he knowingly possessed cocaine. He contends the residue on the pipe found in his truck was unmeasurable and indicated only knowing possession of paraphernalia, thus rendering any inference of knowing possession of cocaine unreasonable.

■ Possession is a voluntary act if the possessor knowingly procures or receives the thing possessed, or having acquired control of it, he was aware of his control for a sufficient time to have enabled him to dispose of it or to terminate his control. Section 562.011.3 RSMo. (2000); *State v. Taylor*, 216 S.W.3d 187, 192 (Mo.App. E.D. 2007) (abrogated on other grounds by *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009)).[3] Possession can be either actual or constructive. Section 195.010(34) RSMo. (Supp.2008). A person has actual possession if he has the substance on his person, or within his easy reach and convenient control. *Id.*, *Taylor*, 216 S.W.3d at 192.

■ Missouri's drug statutes do not establish a minimum amount necessary to sustain a conviction for illegal possession. *Id.* at 192. Rather, the defendant's guilt depends on his acts and knowledge—whether his knowing possession may be fairly inferred given the *de minimis* amount combined with all the surrounding circumstances. *Id.* at 193. Thus, although the drug may be an unweighable residue, 1) the drug must be present, 2) the defendant must know of its presence and nature, and 3) the defendant must possess it, either actually or constructively. *Id.*

In this case, Officer Garrett stopped the defendant's truck for a routine traffic violation. On discovering that the defendant had several outstanding warrants, Officer Garrett informed the defendant that he was under arrest, but the defendant fled, leading multiple officers on an extended chase through an apartment complex. After the defendant abandoned his truck in the roadway and fled on foot, Officer Garrett called for a tow truck and performed an inventory search of the defendant's pick-up. Officer Garrett found a glass pipe—of a kind commonly used for smoking crack cocaine—lying in plain view in the passenger seat.

■ The drug was present. The pipe had a visible residue on it, and although not weighed, laboratory testing revealed that the residue contained cocaine base. The visibility of a drug is a factor that supports an inference that a defendant who saw the residue knew of its presence and nature. *State v. Kopp*, 325 S.W.3d 466, 469 (Mo.App. S.D.2010). If the residue was visible to Officer Garrett and the laboratory analyst, it would have been visible to the defendant. *Id.* The visible residue in a pipe of a kind commonly used for smoking crack cocaine supports an inference that the defendant knew of the drug's presence and nature. Finally, the defendant actually possessed the cocaine because he had it in plain view on the seat next to him, within his easy reach and convenient control. In fact, when he first

---

**3.** *Arizona v. Gant* addressed police authorization to search a vehicle incident to a recent occupant's arrest after the occupant has been secured away from the vehicle, an issue present in *Taylor* but not present in this case.

stopped the defendant, Officer Garrett observed him reaching around in the area where Officer Garrett later found the cocaine.

The defendant urges us to follow *State v. Baker*, 912 S.W.2d 541 (Mo.App. W.D. 1995), and *State v. Polk*, 529 S.W.2d 490 (Mo.App.St.L.D.1975)(abrogation recognized by *Kopp*, 325 S.W.3d at 470–71), based on the proposition that an unweighable drug residue cannot support a conviction for possession. Our Supreme Court, however, has held that possession of even "a modicum" of an illegal drug can support a conviction. *State v. Young*, 427 S.W.2d 510, 513 (Mo.1968)(per curiam).

This Court has specifically disagreed with *Baker*'s assertion that "residue too small to measure" cannot suffice to establish possession. *Taylor*, 216 S.W.3d at 193 n. 8 (quoting *Baker*, 912 S.W.2d at 543). Furthermore, *Baker* and *Polk* are distinguishable. The holding in each of those cases was limited to their particular circumstances where the only evidence of the defendant's knowing possession of drugs was his possession of a residue, without any additional evidence to demonstrate knowledge of the presence and nature of the residue. And, in each case, there was evidence that the defendant lacked awareness of the residue's presence. *Id.* at 191. In *Baker*, the defendant stated that he had just bought the pipe that was later found to contain the drug residue. 912 S.W.2d at 542. In *Polk*, the defendant introduced evidence that he and three other people used the apartment in which police found the drug residue, and that the jewelry box containing the drug residue—seized from a closet shelf in a back bedroom—belonged to one of the other persons. 529 S.W.2d at 491–92.

In sum, the pipe was found in plain view in the defendant's truck, and contained a visible residue that tested positive for cocaine. The defendant, the truck's sole occupant, actually possessed the substance within his reach and convenient control in the passenger seat next to him, and Officer Garrett observed the defendant reaching around in the area where the pipe was found. The defendant's knowing possession may thus be fairly inferred. We hold that the State adduced sufficient evidence to make a submissible case. We deny the defendant's point challenging the sufficiency of the evidence to support his conviction for possession of a controlled substance (cocaine).

### The Defendant's Driving Record

The defendant challenges the admission of his full driving record, which spanned more than twenty years and showed some 22 prior convictions for driving while revoked or suspended, including notice of a revocation occurring several months after the events charged here. He argues that admission and publication of his complete driving record to the jury without first redacting portions that identified other crimes was not legally relevant since the record's prejudicial effect outweighed any marginal probative value. The defendant points out that he was willing to stipulate, or confess, to all elements of the charge of driving while revoked. The defendant also argued during the hearing on his motion in limine that, in the alternative, the court should limit admission of the driving record to only the most recent entries that would establish the defendant's knowledge of his revoked status. Nonetheless, the State refused the stipulation, and insisted on entering into evidence the defendant's 56–page driving record reaching back to 1986 because it was "critical" to prove that he knew his driving privilege was revoked on February 4, 2009.

 "The 'well-established general rule' concerning the admission of evidence

of prior criminal acts 'is that proof of the commission of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial.'" *State v. Vorhees,* 248 S.W.3d 585, 587 (Mo. banc 2008) (quoting *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (Mo. banc 1954)). The rationale underlying the rule is grounded in the view that evidence of other crimes, when not properly related to the case on trial, violates the defendant's right to be tried for the offense for which he is indicted. *Id.* This right arises from the guarantee of article I, sections 17 and 18(a) of the Missouri Constitution that a defendant has the right to be tried only for the offense charged. *Id.* at 587–88. Thus, evidence of prior misconduct is inadmissible if it is offered for the purpose of showing the defendant's propensity to commit such crimes. *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993).

A number of exceptions exist to the general ban on evidence of prior criminal acts. *Vorhees,* 248 S.W.3d at 588. These exceptions—as well-established as the rule itself—include motive, intent, absence of mistake or accident, common scheme or plan, and identity of the person charged. *Id.* Evidence of prior bad acts is also admissible where offered to rebut the defendant's volunteered assertions from the stand that he has never been guilty of any misconduct. *Id.* This exception for purposes of impeachment is potentially relevant only where the defendant testifies, which the defendant in this case did not. *Id.*

The State contends that the entire driving record was admissible to prove the defendant's intent, and that it was legally relevant because its probative value outweighed its prejudicial effect. The State argues that the earlier revocations and the surrounding circumstances were relevant to show that the defendant's failure to be aware of his revoked driving privilege was a gross deviation from a reasonable standard of care. We reject this reasoning.

First, even if we were to assume that the defendant's entire driving record covering the last twenty years were somehow logically and legally relevant, the criteria of logical and legal relevance are not intended to serve as a loophole for evading the general ban on propensity evidence. *Id.* at 591. A finding of logical and legal relevance will never provide a basis for the admission of evidence of prior crimes for purposes of demonstrating a defendant's propensity. *Id.* "Propensity evidence, although logically relevant, is unconstitutional because it 'violates [the] defendant's right to be tried for the offense for which he is indicted.'" *Id.* (quoting *State v. Sladek,* 835 S.W.2d 308, 311 (Mo. banc 1992)).[4]

Second, in order for either intent or absence of mistake to serve as the basis for the admission of evidence of similar crimes, it is necessary that those be legitimate issues in the case. *State v. Frezzell,* 251 S.W.3d 380, 386 (Mo.App. E.D.2008). Likewise, knowledge must be a controverted issue in order for it to serve as a basis for admission of prior bad acts. *Id.* In the present case, the defendant never asserted that he did not know that his driving privilege was revoked. In fact, he conceded that his driver's license was revoked on February 4, 2009, and that he

---

**4.** Evidence is logically relevant if it tends to make the existence of any material fact more or less probable than it would be without the evidence. *Vorhees,* 248 S.W.3d at 591. This low-level test is easily met simply because recidivism statistics show that prior offenders commit more crimes that persons who have not previously committed a crime. *Id.*

knew it was revoked. Therefore, the defendant's knowledge or intent was not an issue, and evidence of his prior convictions was not admissible to show his intent or knowledge. *Id.*

Furthermore, the cases relied on by the State at the hearing on the defendant's motion in limine, two of which the State cites in its brief, are far from analogous. In *Huffman,* the defendant did not raise the issue of improper propensity evidence, but rather, claimed that the trial court erred in admitting his driving record because it was not authenticated or identified by a custodian, and thus constituted hearsay. 627 S.W.2d at 672–73. In *Brown,* the defendant affirmatively waived any objection to admission of his driving record, so his claim on appeal that the court erred in allowing an edited version of his driving record to be published to the jury was not preserved. 804 S.W.2d at 397–98. Brown also contested the sufficiency of the evidence to show that he knew his driving privilege was revoked. *Id.* at 398. Thus, when the Court held—without analysis or discussion of the issue of propensity evidence—that Brown's entire driving record was admissible and relevant, it did so in connection with the contested issue of the defendant's knowledge. *Id.*

Finally, *Johnston* is factually distinguishable. There, the defendant's extensive driving record was admitted into evidence, but a witness read to the jury only two entries regarding points for driving while intoxicated and the corresponding license revocation, which occurred some six months before the actions for which Johnston was being tried. 778 S.W.2d at 322–23. The Court observed the prejudicial nature of the DWI conviction as to all of the charges for which Johnston was on trial, and that the nature of the offense leading to license revocation should not have been revealed to the jury. *Id.*

at 323–24. Johnston, however, failed to request that the judge, rather than a witness, read the relevant portion of the record, failed to specifically object to revealing the prior offense to the jury, and failed to request specific relief from the prejudicial part of the evidence. *Id.* at 324. Consequently, the Court held that the trial court properly had the witness read the two relevant entries from the extensive driving record to the jury, and noted that Johnston's record was so extensive that even a redaction would have been prejudicial. *Id.*

Now let us turn to the circumstances of this case. Here, the defendant was willing to stipulate, or confess, to all elements of the charge of driving while revoked, the only charge for which his driving record was even arguably relevant. In the alternative, the defendant asked the court to limit admission of the driving record to only the most recent entries that would establish the defendant's knowledge of his revoked status. Indeed, the defendant's opening statement even conceded that he was guilty of this offense. No element of the charge of driving while revoked was ever contested. And the State could have easily established that the defendant knew his license was revoked by relying only on the portion of the record that showed his license revocation covering the date in question and with the reason for the revocation redacted. Yet the State insisted on admitting and publishing to the jury the entire driving record containing numerous traffic-related violations and criminal offenses (minus only some police reports), and repeatedly emphasized to the jury that the defendant had 22 prior convictions for driving while revoked or suspended. Furthermore, the State argued to the jury that, "[i]t is time when we deal with this defendant to move beyond passing out traffic tickets because he's moved beyond that." And, "[Y]ou need to find him guilty

of everything else, too, because this [conviction number 23 for driving while revoked or suspended] isn't going to mean anything to the defendant."

Given these circumstances, we can only conclude that the State adduced the entire driving record to emphasize to the jury that the defendant was a bad person who should be found guilty of something more serious than driving while revoked in order to stop him from driving. The State wanted the jury to see the defendant's entire driving record because the State wanted to use it as evidence of the defendant's propensity to commit crimes, and thus to encourage the jury to "find him guilty of everything else, too." We fail to perceive any legitimate reason for the State's insistence on admitting and publishing to the jury the defendant's full driving record reaching back more than twenty years before the events for which the defendant was on trial.

The admission of the defendant's entire driving record under these circumstances constitutes an abuse of discretion. Nevertheless, the trial court's error in admitting the disputed evidence does not constitute reversible error unless the defendant can show that he was prejudiced, or that a reasonable probability exists that the verdict would have been different absent the court's error. *Frezzell*, 251 S.W.3d at 386. The test for prejudice in criminal cases involving the improper admission of evidence is whether the improper admission was outcome-determinative. *Id.* at 386–87. A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence. *Id.* at 387.

We conclude that the defendant suffered prejudice by the improper admission of the propensity evidence. While the State made a submissible case on each of the counts, the evidence of assault of a law enforcement officer and possession of a controlled substance was far from overwhelming.

The defendant urges us to follow the reasoning of *State v. Perry,* where the Court held that "when the [S]tate, as here, insists on walking the precipice of reversible error, it must be prepared to suffer the consequences of stepping over the edge—reversal and remand for a new trial." 689 S.W.2d 123, 126 (Mo.App.W.D. 1985).

We require no urging. Further, we do not find that the prosecutor drifted a bit too close to the cliff's edge. Rather, we conclude that the prosecutor flung himself headfirst into the abyss. We reverse the trial court's judgment on the remaining counts, and remand the cause for a new trial.

KATHIANNE KNAUP CRANE, P.J., and KENNETH M. ROMINES, J., concur.