

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,                          )
                                            )
    Plaintiff-Respondent,          )
                                            )
v.                                          )    No. SD38592
                                            )
                                            )    Filed: **May 30, 2025**
ALAN KEITH GILLIAM,                         )
                                            )
    Defendant-Appellant.           )

APPEAL FROM THE CIRCUIT COURT OF WEBSTER COUNTY

Honorable Chuck Repogle, Judge

**AFFIRMED**

Alan Keith Gilliam ("Defendant") appeals from his conviction, following a jury trial, of five counts of second-degree statutory rape under §566.034.[1]  Defendant contends the trial court erred by admitting evidence that a third party committed sexual abuse against Victim prior to the incidents of sexual abuse charged against him.  Finding no error, we affirm.

### Factual Background and Procedural History

When Victim was thirteen years old, she began dating Boyfriend, who was eighteen or nineteen years old.  Defendant and his wife were friends with Boyfriend.  After Boyfriend started

---

[1] All statutory references are to RSMo 2016 unless otherwise indicated.

bringing Victim to Defendant's home, Victim became friends with Defendant and Defendant also became friends with Victim's parents. Boyfriend would bring Victim to Defendant's house multiple times a week. When Victim was fourteen and fifteen years old, Defendant sexually abused Victim on multiple occasions in his home, in his garage, in Boyfriend's residence, and near a creek. Boyfriend participated while Defendant was sexually abusing Victim. The sexual abuse often occurred when no one else was in the home, but there were at least two instances where others were in the residence and the sexual abuse either occurred in a separate room or in the "shop," a building just outside of Defendant's residence.

Victim did not come forward about the abuse until a few years later, when she was seventeen years old. The police contacted Defendant, who had moved to Texas, and asked Defendant if he would come to the police station in Missouri for an interview. Defendant agreed. Upon Defendant's arrival, an officer ("Officer") read Defendant his *Miranda* rights and escorted him to an interview room. Defendant stated that he understood his rights. The interview room was unlocked and Defendant was permitted to leave if he wished. During the recorded interview, Defendant told Officer that he had cried during the drive up because he suspected he knew what they wanted to talk about, and admitted to sexually abusing Victim on numerous occasions.

Defendant was arrested and charged with five counts of statutory rape in the second degree. In addition to the evidence outlined above, Defendant's recorded interview, including his admissions to the crimes, was admitted at trial and played for the jury. Officer testified that Defendant was at least thirty-four years old at the time of the abuse. Further, the evidence at trial supported that Defendant would have known Victim's age at the time of the abuse.

2

During the State's opening statement, Victim's stepfather ("Stepfather") was discussed. Defendant objected that such evidence was irrelevant, and the State responded that the evidence was relevant to Victim's credibility and to explain why Victim delayed her disclosure of the abuse to law enforcement.[2] The trial court overruled the objection, and the State proceeded to briefly discuss sexual abuse perpetrated on Victim by Stepfather in its opening statement.

During Victim's testimony, the State asked Victim if Stepfather had ever sexually abused her. Defendant renewed his objection on relevance grounds. The trial court again overruled the objection.

Victim testified that Stepfather began grooming her when she was nine or ten years old and began sexually abusing her when she was twelve. When Victim was twelve, she told a few friends and teachers at school of the abuse, but nothing ever came of it. When Victim was sixteen, she told her mother about Stepfather's abuse. Victim's mother became upset with her and hit her. This caused a strain on Victim and her mother's relationship. When Victim was seventeen years old, she told a childhood friend about the abuse. The friend encouraged Victim to come forward, and Victim ultimately disclosed both her Stepfather's and Defendant's abuse.

The jury found Defendant guilty on all five counts of second-degree statutory rape. The trial court sentenced Defendant to seven years to run consecutively for Counts I-III, and seven years to run concurrently for Counts IV and V. This appeal followed.

---

[2] Although Defendant's objections were transcribed as "indiscernible," context makes clear that Defendant objected on relevance grounds. Defendant was granted a continuing objection and later renewed his objection (transcribed again as "indiscernible").

**Standard of Review**

The parties do not dispute the applicable standard of review.[3] Evidentiary rulings are reviewed under an abuse of discretion standard. *State v. Madrigal*, 652 S.W.3d 758, 771 (Mo. App. E.D. 2022). "A trial court has broad discretion to admit or exclude evidence at trial," *id.* (citing *State v. Buechting*, 633 S.W.3d 367, 376 (Mo. App. E.D. 2021)), and we review evidentiary rulings "for prejudice, not mere error, and the trial court's decision will be reversed only if the error was sufficiently prejudicial that it deprived the defendant of a fair trial." *Id.* at 772. "A trial court abuses its discretion when its decision is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* at 771 (internal citations omitted). If evidence was improperly admitted, "the test for prejudice is whether the error was outcome-determinative." *State v. Thomas*, 628 S.W.3d 686, 691 (Mo. App. E.D. 2021). "[W]e will affirm the trial court's ruling on the admissibility of evidence if it is sustainable under any theory." *Madrigal*, 652 S.W.3d at 772.

**Analysis**

Defendant does not contest the sufficiency of the evidence to support his convictions but instead argues the trial court erred by admitting evidence of Stepfather's abuse, prejudicing Defendant. Defendant argues this "other acts" evidence was not relevant and was substantially more prejudicial than probative.[4]

---

[3] Both Appellant and Respondent agree in their briefs that, although the objection is transcribed as "indiscernible," the objection was to relevance. The parties do not dispute that Defendant's objection was properly preserved.

[4] Defendant alleges the only way to admit the evidence of the third-party abuse would be to depict "motive, intent, absence of mistake or accident, or common plan or identity," and Defendant cites the standard for the admissibility for a *defendant's* prior criminal acts. *See State v. Frezzell*, 251 S.W.3d 380, 384 (Mo. App. E.D. 2008). Defendant's objection at trial was to the relevance of evidence relating to a third-party, not Defendant, who committed abuse against Victim.

For evidence to be admissible, it must be both logically and legally relevant. *See State v. Mills*, 687 S.W.3d 668, 677-78 (Mo. banc 2024). "Evidence is logically relevant when it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence[.]" *State v. Love*, 700 S.W.3d 288, 294 (Mo. App. W.D. 2024) (quoting *State v. Smith*, 798, 805 (Mo. App. E.D. 2024)). "Evidence is legally relevant if its probative value outweighs the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Mills*, 687 S.W.3d at 677-78 (quoting *Davis v. State*, 653 S.W.3d 169, 174 (Mo. App. S.D. 2022)).

Defendant argues that, because the evidence of Stepfather's abuse was not connected with Defendant, it had little probative value. We disagree. The State used the evidence of Stepfather's abuse, and what happened to Victim when she reported it, to explain Victim's delay in reporting Defendant's abuse. After Defendant objected, the trial court asked Defendant if he "anticipate[d] that delayed disclosure might be an issue in this case?" to which Defendant responded affirmatively: "It could [indiscernible]."

The State cites *State v. Miller*, 372 S.W.3d 455 (Mo. banc 2012), to support the contention that the evidence of Stepfather's abuse was relevant. Although the present case is distinct from *Miller* in that the "bad acts" in this case do not relate to conduct of Defendant, Missouri case law has long held that evidence relating to a victim's delayed disclosure is relevant. *State v. Suttles*, 581 S.W.3d 137, 149 (Mo. App. E.D. 2019), and *State v. Woolard*, 604 S.W.3d 913, 920 (Mo. App. S.D. 2020) ("We have repeatedly held that delayed-disclosures evidence is relevant in cases involving child-victims of sexual abuse"); *State v. Ezell*, 233 S.W.3d 251 (Mo. App. W.D. 2007) (holding that it was not improper for a prosecutor to ask if

any juror would disbelieve the testimony of a sexual abuse victim because she did not report it for months after it occurred because "it was a critical fact that the victim had delayed . . . reporting the molestation" because "[i]t was a fact that the defense should and would repeatedly emphasize to attack the credibility of the victim"). Further, cases such as *Miller* are instructive to our analysis of the relevance of this evidence, even though *Miller* involves "bad acts" of a defendant as opposed to a third-party.

The evidence of Stepfather's abuse of Victim was logically relevant because it was probative of her credibility, helping to explain why she waited several years to report Defendant's abuse. *See Miller*, 372 S.W.3d at 474 (holding that evidence of other acts of a defendant may be admissible to "explain a witness's delay in reporting a matter"). The evidence was permissible to "combat perceived forthcoming attacks on the credibility" of Victim. *Id.* It was also legally relevant. Where, as here, the sole evidence of Defendant's abuse was Victim's testimony, Defendant's confession, and Defendant's contradictory testimony, the evidence of Stepfather's abuse and its impact on Victim's delay in reporting Defendant's abuse was particularly probative.

Defendant's assertion that the jury convicted him based on the evidence of Stepfather's conduct is purely speculative, and there is no evidence in the record to suggest that occurred. In the few instances where the State addressed such evidence during the trial, it was in the context of explaining why the Victim took the actions that she did in belatedly reporting Defendant's abuse. The jury was specifically instructed on the offenses for which they may convict Defendant and, absent evidence to the contrary, we presume that the jurors followed those instructions. *See State v. Alvarez*, 628 S.W.3d 400, 411 (Mo. App. W.D. 2021). Therefore, the trial court did not abuse its discretion in admitting evidence of Stepfather's separate abuse.

Even if the court had erred in admitting evidence concerning Stepfather, which we hold it did not, Defendant fails to show how the admission of such evidence was outcome-determinative. Defendant has the burden to show that, but for the evidence of Stepfather's abuse, there would be a reasonable probability the jury would have acquitted Defendant. *See* ***State v. Yung***, 246 S.W.3d 547, 555 (Mo. App. S.D. 2008) ("In a criminal case involving improperly admitted evidence, the test for prejudice is whether the error was outcome-determinative") (internal citations omitted).

Here, viewing the evidence in the light most favorable to the verdict, ***State v. Lavendar***, 680 S.W.3d 119, 122 (Mo. App. S.D. 2023), Victim's testimony, coupled with Defendant's confession, permitted the jury to find that Defendant committed the charged crimes. Victim testified to sexual abuse perpetrated by Defendant on multiple occasions, and Defendant confessed to the crimes during a police-recorded interview, which the jury heard. Although Defendant testified at trial that he made up his statements during the police interview so he could go home, the jury clearly rejected that assertion. Defendant fails to show that but for the admission of evidence regarding Stepfather's abuse, the jury would not have convicted Defendant of the five counts charged. Defendant's Point is denied.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.


MATTHEW P. HAMNER, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS

7